THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EDWARD RABUS, Defendant-Appellant.

First District (5th Division)    No. 1—89—1167

Opinion filed November 30, 1992.

Rita A. Fry, Public Defender, of Chicago (Lisa S. Ottenfeld and Bruce
Landrum, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica
X. Calderon, and Laura E. Forester, Assistant State's Attorneys, of coun-
sel), for the People.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

After a bench trial, defendant was convicted of aggravated criminal sexual assault. The court found defendant guilty but mentally ill and sentenced him to eight years in the Illinois Department of Corrections with directions that he be sent to the Department of Mental Health as soon as possible. Defendant appeals, contending that: (1) the trial court erred in denying his motion to suppress statements; (2) the State failed to prove him guilty beyond a reasonable doubt; and (3) the trial court improperly considered defendant's sentence prior to the sentencing hearing and considered inadmissible evidence as an aggravating factor in sentencing defendant.

The hearing on defendant's motion to suppress was held simultaneously with the trial. D.R. testified that in the winter of 1987, while he was eight years old, he was at the school playground when defendant approached him and offered to take him to the candy store. After buying D.R. candy and soda pop, defendant took D.R. to a "big building with a fence around it" that defendant called the "clubhouse." Once there, defendant got on top of D.R. and rubbed against him. Defendant unbuttoned D.R.'s pants and performed oral sex on D.R. Defendant then pulled D.R.'s clothes back up, told him not to tell anybody what had just happened, and took D.R. back to the playground.

D.R. stated on cross-examination that a few days after the incident, he told his father what had occurred at the clubhouse. D.R. then took his father to the clubhouse, which was defendant's place of residence.

Officers Rider and Williams testified that they went to defendant's place of residence and spoke with Ms. Flowers, defendant's foster mother, and Ms. Colburn, a friend of the defendant. Officer Williams advised defendant of his *Miranda* rights. After acknowledging that he understood his rights, defendant agreed to speak with the officers. When Officer Williams asked defendant if he knew D.R., defendant responded that he had been playing with D.R. that day. Defendant was then placed under arrest and taken to the police station. Colburn went with defendant to the station and told the officers not to question defendant. Detective Nuccio informed defendant of his *Miranda* rights. Defendant stated that he understood his rights and agreed to talk to Nuccio. During this conversation, defendant told Nuccio that he had simulated intercourse

and performed oral sex on D.R. in the clubhouse. Defendant's account of the incident was virtually identical to that given by D.R.

Assistant State's Attorney Paula Becker testified that she also gave defendant his *Miranda* rights and explained to defendant that she was a lawyer working with the police and not his lawyer. Defendant acknowledged that he understood and he then told Becker essentially the same story of simulating intercourse and performing oral sex on D.R. Becker asked defendant if he would give a written statement and he refused. Becker stated that at no time did defendant appear to have any problem understanding her questions. Defendant was responsive and never said that he did not understand what Becker was talking about. Becker also stated she did not notice anything unusual or peculiar about defendant's speech, although defendant did not seem like the smartest person she had met.

Flowers testified on behalf of the defense that when the police came to her house, she told them not to question defendant because "if he get [*sic*] nervous, he is going to say yes to everything you ask him."

When defendant testified at trial, he denied having any sexual contact with D.R. or even taking D.R. to his house. He stated that after he was read his rights, the officer asked defendant if he understood his rights, and defendant responded that he did not. Defendant said that he told the officers that he did not do anything to D.R. but defendant was told if "I say it, I can go home."

The parties stipulated that defendant was 22 years old at the time of the incident. They also stipulated to a report submitted by Dr. Mark Andur following his psychiatric evaluation of defendant. In this report, Dr. Amdur concluded that defendant did not suffer from any mental illness or defect to the extent that he lacked the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. The report also indicated that defendant had an IQ of 69, placing him at the highest end of the mild mental retardation range. Dr. Amdur found that defendant was able to understand the work of psychiatrists, the fact that a report would be prepared, and the judge would read the report, and decide what to do with the case. Defendant gave the name of his attorney and said it was his attorney's job to defend him. Dr. Amdur noted that defendant had a poor understanding of the State's Attorney's role and at one point said that the State's Attorney's job was to help him. According to Dr. Amdur, defendant knew he had been charged with sexual assault but denied any sex-

ual activity with D.R. Occasionally, questions had to be simplified and repeated for defendant, but Dr. Amdur was always able to obtain comprehension.

The court denied defendant's motion to suppress defendant's statements and found him guilty of sexual assault.

■ Defendant's first contention is that the trial court erred in denying defendant's motion to suppress. We disagree. A valid waiver of *Miranda* rights must be voluntary, intelligent and knowing. (*Colorado v. Connelly* (1986), 479 U.S. 157, 93 L. Ed. 2d 473, 107 S. Ct. 515; *People v. Bernasco* (1990), 138 Ill. 2d 349, 562 N.E.2d 958.) A mental deficiency alone is not enough to render a confession or statement involuntary, but rather it is one issue to be considered in reviewing the totality of circumstances under which the statement was made. (*People v. Turner* (1973), 56 Ill. 2d 201, 306 N.E.2d 27.) A reviewing court will not disturb a trial court's determination on a motion to suppress unless it is against the manifest weight of the evidence. *People v. Phillips* (1992), 226 Ill. App. 3d 878, 589 N.E.2d 1107.

Applying these principles to the facts here, we do not find the trial court's denial of the motion to suppress to be against the manifest weight of the evidence. Defendant was advised of his *Miranda* rights three times, and each time defendant stated that he understood them. At no time did defendant state that he did not understand nor did he ask that questioning cease.

Defendant directs our attention to Ms. Flowers' statement that defendant will say "yes" to anything asked of him when he gets nervous. In addition, defendant cites an article stating that mentally retarded people are predisposed to answer in the affirmative. What the record in this case reveals, however, is that defendant was indeed capable of giving a negative response and did so when involved in stressful situations. When defendant was first·confronted by the police, he denied the charges against him. (See *People v. Burke* (1987), 164 Ill. App. 3d 889, 518 N.E.2d 372 (defendant's refusal to confess his involvement in the crime at the time he was first arrested belies his argument that he confessed later only because he did not understand those rights and the police took advantage of his limited mental abilities).) Moreover, when Assistant State's Attorney Becker asked defendant to put his statement into writing, defendant refused. (See *People v. Long* (1991), 217 Ill. App. 3d 940, 578 N.E.2d 26 (defendant's indication that he did not want to put statement into writing indicates defendant had the ability to make choices).) Furthermore, when defendant was questioned about

the incident by Dr. Amdur, he not only denied the charges against him, but he responded negatively to many of the questions asked by Dr. Amdur. What is most significant is that during trial, which is undeniably a stressful situation, defendant denied that he made the statements attributed to him and denied having any sexual contact with D.R. These incidents demonstrate defendant's ability to make choices and his ability to evaluate and understand his rights.

We also note that the police officers and Assistant State's Attorney Becker testified that at the time defendant gave his statements, he appeared normal and coherent. In addition, the trial court had the opportunity to observe defendant and evaluated his ability to respond to verbal questioning. (*People v. Ellison* (1984), 126 Ill. App. 3d 985, 446 N.E.2d 1024.) Based on these factors, we cannot conclude that the trial court's decision denying the motion to suppress was against the manifest weight of the evidence.

■ Defendant next maintains that his conviction should be reversed because his trial counsel rendered him ineffective assistance of counsel when he insufficiently raised the issue of whether defendant was capable of waiving his *Miranda* rights. We find absolutely no merit to defendant's contention. It is clear that defense counsel did in fact raise the issue of the waiver of defendant's *Miranda* rights. Defense counsel filed a motion to suppress the defendant's statement and the court ruled on this motion. "The mere fact that counsel was unable to secure the suppression of the confessions does not constitute incompetence." *People v. Murphy* (1978), 72 Ill. 2d 421, 438, 381 N.E.2d 677.

■ Nor is there any merit to defendant's contention that the State failed to prove defendant guilty beyond a reasonable doubt. The standard of review is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Schott* (1991), 145 Ill. 2d 188, 582 N.E.2d 690.) Based on the testimony presented at trial, the trial court had sufficient evidence from which to find defendant guilty beyond a reasonable doubt.

■ Defendant's final contention is that the trial court erred in sentencing him to eight years in prison because the court determined his sentence before the sentencing hearing and the court improperly considered an arrest in aggravation, without any substantive evidence regarding that arrest. While it was improper for the trial court to consider as aggravation defendant's mere arrest, there is no rational reason to remand for resentencing, since

770

defendant has already served his sentence. *People v. Dunn* (1976), 40 Ill. App. 3d 684, 353 N.E.2d 48.

Accordingly, based on the reasons set forth above, we affirm.

Affirmed.

LORENZ and GORDON, JJ., concur.