# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. Lloyd*, 2013 IL 113510

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TERRY LLOYD, Appellant. |
| Docket No. | 113510 |
| Filed | April 18, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a middle-aged defendant did not dispute that he sexually penetrated a girl he knew was 13 years old, but was charged under a statute requiring proof that he knew of her inability to understand the nature of the act or give knowing consent (which historically has been construed to apply only to victims who are typically severely mentally disabled, highly intoxicated, unconscious or asleep), his jury convictions were reversed where this was not proved. |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of McLean County, the Hon. Charles G. Reynard, Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and reversed in part.<br>Circuit court judgment reversed.<br>Convictions and sentences vacated. |

| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Karen Munoz, Deputy Defender, and Ryan R. Wilson, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Springfield, for appellant. |
|---|---|
| | Lisa Madigan, Attorney General, of Springfield, and Ronald Dozier, State's Attorney, of Bloomington (Michael A. Scodro, Solicitor General, and Michael M. Glick and Gopi Kashyap, Assistant Attorneys General, of Chicago, of counsel), for the People. |
| Justices | JUSTICE THEIS delivered the judgment of the court, with opinion. |
| | Justices Freeman, Garman, and Burke concurred in the judgment and opinion. |
| | Justice Thomas specially concurred, with opinion, joined by Chief Justice Kilbride and Justice Karmeier. |

**OPINION**

¶ 1    Following a jury trial in the circuit court of McLean County, defendant, Terry Lloyd, was convicted of seven counts of criminal sexual assault under section 12-13(a)(2) of the Criminal Code of 1961 (Code) (720 ILCS 5/12-13(a)(2) (West 2008)).[1] Defendant appealed contending that the State failed to present sufficient evidence to support his convictions. A divided appellate court rejected this claim, affirmed six of his convictions, and reversed and remanded the remaining conviction for a new trial on other grounds. 2011 IL App (4th) 100094, ¶¶ 37, 45. For the reasons that follow, we affirm in part, and reverse in part, the judgment of the appellate court and conclude that all seven of defendant's convictions must be reversed. The evidence of the victim's age, and defendant's knowledge of that age, alone, was insufficient to prove that defendant knew the victim was unable to understand the nature of the sex acts or give knowing consent as required to sustain his convictions as charged.

¶ 2                                BACKGROUND

¶ 3    On January 9, 2009, the State charged defendant with seven counts of criminal sexual assault pursuant to section 12-13(a)(2) of the Code. The indictments alleged that between September 1, 2008, and January 7, 2009, defendant committed seven acts of vaginal penetration, with his hand or mouth, upon P.V., who was a minor under the age of 17. It was further alleged that at the time of the acts, defendant knew that P.V. was unable to understand

---

[1]This provision was renumbered as section 11-1.20(a) by Pub. Act 96-1551 (eff. July 1, 2011); see 720 ILCS 5/11-1.20(a) (West 2010).

the nature of the sex acts or give knowing consent to them.

¶ 4    The following evidence was adduced at defendant's jury trial. P.V. was 13 years old at the time of the incidents and lived with her mother, older sister, and her aunt, Brenda, among other relatives. Defendant had been a family friend whom P.V. had known almost her entire life. Brenda had previously dated defendant and, at the time of trial, was married to defendant's half-brother.

¶ 5    P.V. testified that when she was younger, she had enjoyed spending time with defendant. They would listen to music together, make jokes, and do "normal stuff." Around September 2008, defendant hugged P.V. in a way that made her feel uncomfortable. He lifted her up in the air and when bringing her back down slid his hand across her buttocks. Defendant then asked her for another hug and when she complied, he again lifted her up and touched her buttocks for a few seconds.

¶ 6    Approximately one or two weeks later, P.V. returned home with her mother following a basketball game. She noticed defendant's van parked in the driveway and that defendant and her aunt, Brenda, were inside the van. She entered the vehicle and sat behind her aunt, who was in the front passenger seat. P.V. was wearing a basketball jersey tucked into her shorts and had sweatpants over the shorts. At some point while defendant and Brenda were talking, defendant reached back from the driver's seat, which was reclined, and placed his hand on her knee. He rubbed her knee and then slowly moved his hand up her leg two or three inches. Defendant later placed his hand in P.V.'s sweatpants and began rubbing her "private" over her shorts. She testified that she was kind of scared and felt weird. Brenda subsequently got out of the van. Defendant then told P.V. that she was beautiful and sexy. She felt awkward and laughed because she thought he was joking. Defendant then rubbed her thigh and pulled her sweatpants down a little. At defendant's request, she untucked her basketball jersey and he rubbed her "private part" on top of her underwear. Defendant then placed his hand in her underwear, touched the part of her private area that "has the hole," and moved his finger up and down in that area. When P.V. saw a light go on in the house, she told defendant that someone was coming. Defendant stopped touching her, and she put her pants back on.

¶ 7    A second incident occurred approximately one or two weeks later when defendant was again visiting P.V.'s aunt. P.V. got into defendant's van to listen to music, and he joined her a few minutes later. He sat in the driver's seat and asked her whether she had enjoyed herself the last time. He told her that she was beautiful and that he wanted her to be "his girl." He began touching her leg and then her "private" in a circular motion over her clothes. Defendant told her that she had too much clothing on so she walked into the house and changed. She returned to the van in sweatpants, an undershirt, and a sweatshirt. P.V. changed because she thought that defendant wanted to do the same thing that he did the last time. Defendant did not tell her what to take off. P.V. testified that she "already kinda knew what [she] was supposed to do."

¶ 8    After she returned to the van, defendant told her to sit in the back passenger-side seat. P.V. complied and she pulled down her sweatpants. Defendant began rubbing her "private part" on top of her underwear. He then placed his hand inside her underwear and "put his

fingers inside of [her] private." Defendant asked P.V. if he could "taste it." P.V. initially said "I don't know," but eventually agreed to his request. Defendant then placed his tongue on P.V.'s vagina. Before P.V. got out of the van, defendant told her not to tell anyone and that "he would get like, 45 to life years." She promised not to tell anyone. When asked what made her decide to go back to the van after changing her clothes, P.V. responded that although she was scared, she thought that was what she was supposed to do. She further testified that her older sister and her sister's friends had talked about the "stuff that they ha[d] done." P.V. testified that she thought that she was supposed to do the same thing.

¶ 9     A third incident occurred about two weeks later when defendant was visiting P.V.'s mother and Brenda. P.V. got into defendant's van again to listen to music. Defendant walked out of the house shortly thereafter and got into the van. After some small talk, he asked her if she wanted to do it again. She initially said no, but after defendant asked her a third time, almost begging, she agreed. She told him that it was going to be the last time. P.V. testified that she felt stupid for not "sticking with what [she] was saying." Defendant began rubbing her leg and she helped defendant pull down her pants. Defendant inserted his fingers into her vagina and performed oral sex for approximately five minutes. She testified that she hoped something would happen or that someone would come out. Defendant then asked her if she had ever "kissed a dick before." She responded that she had not. Defendant asked her if she wanted to try, and she declined. She pulled her pants up and got out of the van. Defendant again asked her not to tell anyone and told her that she makes him nervous. She agreed not to say anything because she did not want to get anyone in trouble. Later that evening, defendant called her for the first time and asked her why she was acting weird around him. She responded that she did not know and ended the conversation.

¶ 10    A fourth incident occurred less than a week later when Brenda told defendant to take P.V. to the gas station to purchase potato chips. P.V. got into defendant's van and thought the two of them were headed to one of the nearby stations. Instead, defendant drove for what "felt like 30 minutes" and parked the van in a secluded location. He then instructed P.V. to get in the back of the van. Once there, he pulled down her pants and began rubbing her "private" over her underwear. He then pulled down her underwear and began rubbing her vagina. He inserted his fingers into her vagina and stated that it seemed like she could take "good dick" or "big dick." Defendant twice asked her if he could put his "private" inside her, and she told him that he could not. After defendant performed oral sex for about 10 minutes, P.V. told him that her aunt would wonder where they had gone. She told defendant that she wanted to stop, and he complied. During the subsequent drive to the gas station, defendant asked her not to tell anyone. A few days later, P.V. decided to tell her older sister about what defendant had done, and then P.V. told her mother.

¶ 11    On cross-examination, P.V. testified that she had received education on "good touches" and "bad touches" since sixth grade. P.V. testified that she did not report defendant's behavior earlier because she wanted him to do what he did the first time and thought it was supposed to happen that way, based upon what her friends had told her. She also did not want to damage her family's relationship with defendant. She further testified that she "wanted to have the experience, just not with [defendant]."

¶ 12    Brenda testified that she had known defendant since 1992 and had dated him at one time.

-4-

Between September 2008 and January 2009, defendant visited her house approximately once a week. She recalled some occasions when P.V. and defendant were alone together, including a time when defendant and P.V. went to a store and were gone longer than expected.

¶ 13    Michael Burns, a detective with the Bloomington Police department, testified that he interviewed defendant after meeting with P.V. Burns learned during the interview that defendant was born on February 28, 1966. Defendant admitted to Burns that he listened to music with P.V. in the van, but denied ever being alone with her in the van or anywhere else. He also denied ever calling P.V. on her cell phone. Telephone records were admitted into evidence at trial which indicated that someone using defendant's home phone had called P.V.'s cell phone on two occasions.

¶ 14    Defendant did not present any evidence at trial.

¶ 15    Consistent with Illinois Pattern Jury Instructions, Criminal, No. 11.56 (4th ed. 2000) (hereinafter, IPI Criminal 4th), the jury was instructed that to sustain the charge of criminal sexual assault the State must prove, in pertinent part, the following: "First: That the defendant committed an act of sexual penetration upon [P.V.]; and Second: That the defendant knew that [P.V.] was unable to understand the nature of the act or give knowing consent to the act. ***."

¶ 16    The jury convicted defendant of all seven counts of criminal sexual assault. The trial court subsequently sentenced him to an aggregate term of 44 years' imprisonment.

¶ 17    On appeal, defendant argued that his convictions must be reversed because the State failed to present sufficient evidence to establish that he knew P.V. was unable to understand the nature of the charged acts or give knowing consent to those acts, as required to sustain his convictions under section 12-13(a)(2) of the Code. 2011 IL App (4th) 100094, ¶ 27. The appellate court, over a dissent, affirmed his convictions on six counts of criminal sexual assault. *Id.* ¶ 47. The appellate court reversed his conviction on the one remaining count and remanded for a new trial after concluding that a jury instruction was incomplete and could have influenced the jury's determination on that count alone. 2011 IL App (4th) 100094, ¶ 45. The appellate majority ultimately held that "section 12-13(a)(2) requires the State to prove the defendant knew the person was unable to consent, not simply the victim's age." *Id.* ¶ 33. The appellate majority also concluded the legislature did not intend to exclude the inability to consent based on age as a means of showing defendant committed criminal sexual assault. *Id.* ¶ 33. The appellate majority emphasized that "[c]ontrary to any suggestion by the State, the mere fact P.V. was 13 alone is insufficient to prove 'the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent.' " *Id.* ¶ 34 (quoting 720 ILCS 5/12-13(a)(2) (West 2008)).

¶ 18    The appellate majority concluded, however, that the State presented sufficient evidence to prove defendant knew P.V. was unable to consent because he had known the victim her entire life, had the same birthdate as hers, and, therefore, would have known that she was in her early teens, which was "well below the age of consent." *Id.* The appellate majority also relied upon evidence that defendant told P.V. after the second incident that she could not tell anyone because he would get "45 to life" and told her again after the third and fourth incidents that she could not tell anyone. *Id.* ¶ 35. The appellate majority found such actions

indicate that defendant had knowledge she could not consent to the activities in which they were engaging. *Id.* The appellate majority also noted that the jury had the opportunity to assess P.V.'s personal characteristics, including her maturity level, physical characteristics, and emotional and mental strength on the stand. *Id.* ¶ 36.

¶ 19 Justice Steigmann dissented from the majority opinion because he concluded that the court was obligated to reverse outright all seven of defendant's convictions. *Id.* ¶ 50 (Steigmann, J., specially concurring in part and dissenting in part). He wrote that although defendant engaged in felonious criminal conduct, the crimes charged against him were not the crimes committed. *Id.* He noted that no published opinion had done what the appellate majority did here, which was to affirm a conviction under section 12-13(a)(2) based solely upon the victim's legal condition—her age—and not based upon "her acuity" in any way. *Id.* ¶ 77. He emphasized that the victims in other cases involving section 12-13(a)(2) were unable to understand the nature of the sexual acts or unable to consent because of their mental condition. *Id.* ¶ 57. The victims were typically either severely mentally disabled or in such a drunken state as to be practically comatose. *Id.* He found the appellate majority's construction of section 12-13(a)(2) inconsistent with how the Illinois legislature has defined sex offenses in the Criminal Code. *Id.* ¶ 79. He concluded that "[o]nce the State's claim is rejected—that based solely on P.V.'s age, she was unable to understand the nature of the act or unable to give knowing consent—this record is totally bereft of any evidence to sustain defendant's convictions." *Id.* ¶ 94.

¶ 20 This court granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 21 ANALYSIS

¶ 22 I

¶ 23 At issue is section 12-13(a) of the Code, which provides:

"(a) The accused commits criminal sexual assault if he or she:

(1) commits an act of sexual penetration by the use of force or threat of force; or

(2) *commits an act of sexual penetration and the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent;* or

(3) commits an act of sexual penetration with a victim who was under 18 years of age when the act was committed and the accused was a family member; or

(4) commits an act of sexual penetration with a victim who was at least 13 years of age but under 18 years of age when the act was committed and the accused was 17 years of age or over and held a position of trust, authority or supervision in relation to the victim." (Emphasis added.) 720 ILCS 5/12-13(a) (West 2008).

Therefore, pursuant to section 12-13(a)(2), under which defendant was charged, the State

was required to prove that defendant committed an act of sexual penetration with P.V. and that he knew either: (1) she was unable to understand the nature of the act; or (2) she was unable to give knowing consent.

¶ 24 Defendant does not dispute that the State met its burden of proof concerning the element of sexual penetration. Instead, he argues the State failed to show that he knew of some fact, other than P.V.'s age, which prevented her from understanding the nature of the charged acts, or from giving knowing consent to them. Defendant contends that in the absence of such evidence his convictions must be reversed. His challenge requires us to consider the proper construction of the terms "unable to understand the nature of the act" and "unable to give knowing consent."

¶ 25 It is well settled that issues of statutory construction are questions of law subject to *de novo* review. *People v. Gutman*, 2011 IL 110338, ¶ 12. When construing a statute, this court's primary objective is to ascertain and give effect to the legislature's intent, keeping in mind that the best and most reliable indicator of that intent is the statutory language itself, given its plain and ordinary meaning. *Id.* In determining the plain meaning of the statute, we consider the subject the statute addresses and the legislative purpose in enacting it. *People v. Young*, 2011 IL 111886, ¶ 11. This court has repeatedly held that statutes should be read as a whole and construed so that no part is rendered meaningless or superfluous. *E.g.*, *People v. Edwards*, 2012 IL 111711, ¶ 26. In doing so, we may consider the statute's context, reading the provision at issue in light of the entire section in which it appears, and the Act of which that section is a part. *People v. Jones*, 214 Ill. 2d 187, 193 (2005); *In re Marriage of Mathis*, 2012 IL 113496, ¶ 20.

¶ 26 In order to understand the issue before us, it is necessary to consider the statutory framework defining sex offenses in Illinois.

¶ 27 This state, like every other state in the country, recognizes that a person must reach a certain age to be able to consent to sexual activity. Michelle Oberman, *Turning Girls Into Women: Re-evaluating Modern Statutory Rape Law*, 8 DePaul J. Health Care L. 109, 119 (2004). The age of consent is fixed by the legislature and reflects a judgment about the maturity of minors in matters of sexual conduct. *Beul v. ASSE International, Inc.*, 233 F.3d 441, 450 (7th Cir. 2000). "Although juveniles may factually consent to intercourse, the law *** treats them as incapable of giving legal consent." Russell L. Christopher & Kathryn H. Christopher, *The Paradox of Statutory Rape*, 87 Ind. L.J. 505, 515 (2012). Age of consent laws primarily serve to protect juveniles from the exploitation of older, more experienced sexual predators, and also serve to protect juveniles from themselves because they lack a sufficient understanding and appreciation of the risks and harms of intercourse. *Id.* at 515-16.

¶ 28 Consistent with this reasoning, our legislature has adopted certain age-based sex offenses which specify the victim's age, the age of the accused, and the type of sexual contact that must be proven. The following serve as three examples of such age-based sex offenses found in our Code. Section 12-14.1(a) provides that the accused commits predatory criminal sexual assault of a child if he or she commits an act of sexual penetration with a victim who was under 13 years of age, and the accused was 17 years of age or over. 720 ILCS 5/12-14.1(a)(1) (West 2008). Section 12-16(d) provides that the accused commits aggravated criminal sexual

abuse if he or she commits an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age, but under 17 years of age, and the accused was at least 5 years older than the victim. 720 ILCS 5/12-16(d) (West 2008). Section 12-15(c) provides that the accused commits criminal sexual abuse if he or she commits an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age, but under 17 years of age, and the accused was less than 5 years older than the victim. 720 ILCS 5/12-15(c) (West 2008).

¶ 29    The penalties for violating these aged-based statutes fluctuate significantly based upon the offense. Predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2008)) is a Class X felony (720 ILCS 5/12-14.1(b)(1) (West 2008)), while aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 2008)) is a Class 2 felony (720 ILCS 5/12-16(g) (West 2008)), and criminal sexual abuse (720 ILCS 5/12-15(c) (West 2008)) is a Class A misdemeanor (720 ILCS 5/12-15(d) (West 2008)). A violation of the criminal sexual assault provision under which defendant was convicted (720 ILCS 5/12-13(a)(2) (West 2008)) constitutes a Class 1 felony (720 ILCS 5/12-13(b)(1) (West 2008)). We note that under the criminal sexual abuse and aggravated criminal sexual abuse provisions highlighted above, the State must prove *either* sexual penetration or sexual conduct with a minor, which contradicts the State's argument that under the legislative scheme, sexual penetration of a minor is punished more severely than sexual conduct.

¶ 30    As illustrated by the above offenses, the prescribed age of consent in Illinois is 17, although in a few instances where the accused is a family member or a person in a position of trust or authority, the age of consent is 18 (*e.g.*, 720 ILCS 5/12-13(a)(3), (4), 12-16(b) (West 2008)). See *People v. Hollins*, 2012 IL 112754, ¶¶ 17, 25. Although a mistake by the accused as to the age of the victim may be raised under certain circumstances as a defense,[2] the legislature has determined in the age-based statutes that the willingness of the minor victim to engage in sexual conduct, or even solicit the act, is irrelevant and thus not a defense.

¶ 31    The State urges us to conclude that the accused's knowledge of a victim's status as a minor alone is sufficient under section 12-13(a)(2) to prove that he or she knew the victim was "unable to understand the nature of the act" or "unable to give knowing consent" because a minor, such as the 13-year-old victim in this case, lacks the legal power to consent to an act of sexual penetration in Illinois.

¶ 32    For several reasons, the State's suggested construction of section 12-13(a)(2) is flawed, unworkable, and inconsistent with the legislative structure defining sex offenses in Illinois.

¶ 33    First, the proper inquiry in a prosecution under section 12-13(a)(2) must be on the defendant's particular knowledge of a victim's ability to understand the act or give knowing consent and must be determined by examining the unique facts of each case. This determination cannot be a result of the victim's legal age, alone, because under our statutory framework all 13-year-olds such as the minor victim here are viewed identically as being

---

[2]See 720 ILCS 5/12-17(b) (West 2008) (where it shall be a defense under certain subsections of the criminal sexual abuse and aggravated criminal sexual abuse provisions that the accused reasonably believed the person to be 17 years of age or over).

unable to consent to sexual conduct. The State asserts that there is no specific limiting language in section 12-13(a)(2) that excludes prosecution based solely upon a defendant's knowledge of a victim's young age. Given our statutory framework, however, such limiting language is completely unnecessary.

¶ 34    The State's construction would place before the trier of fact the question of whether *a particular defendant* knew that a minor victim may not legally give knowing consent to an act of sexual penetration. In other words, the trier of fact would decide whether a defendant knew the victim was under 17 and that such a minor could not legally consent to an act of sexual penetration. Where, as in this case, the defendant knew the victim was a minor, the only defense under the State's interpretation would apparently be the accused's ignorance of the law. Of course, ignorance of the law is no defense. *Hollins*, 2012 IL 112754, ¶ 34. Thus, the State's interpretation would lead to an absurd result.

¶ 35    The State also fails to recognize that under the manner it prosecuted defendant in this case, there would be nothing to prevent a jury from acquitting a defendant if it concludes that he or she did not know the minor victim was unable to understand the nature of the act, or give knowing consent, because it found the victim to be a willing participant or unusually knowledgeable or sophisticated about sexual activity, despite the victim's young age. The Code instructs us, however, that it is of no concern how advanced, knowledgeable, or willing a particular minor might be about sexual activity because he or she is incapable of giving legal consent. The legislature has set the prescribed age of consent in this state to protect minors under that age because it has determined that they lack the maturity and judgment to give consent to sexual activity. We refuse to interpret the Code in a manner that would derail that determination and could harm the very minors that our legislature has intended to protect.

¶ 36    Second, the State's construction of the Code has the unacceptable consequence, as occurred in this case, of requiring a minor victim to answer questions at trial as to his or her motivation or willingness to engage in sexual activity with the accused, as well as questions about his or her sex education and knowledge about "good touches" and "bad touches." A minor victim such as P.V. should not be subjected to such questioning because, as we just recognized, it is of no concern how knowledgeable or willing such a minor might be about sexual activity, because he or she is incapable of giving legal consent.

¶ 37    Third, the State's construction would render virtually superfluous other sections of the Code, including two other subsections of the criminal sexual assault provision. As cited above, section 12-13(a)(3) (720 ILCS 5/12-13(a)(3) (West 2008)) provides that the accused commits criminal sexual assault when the accused commits an act of sexual penetration with a victim who was under 18 years of age when the act was committed and the accused was a family member. Thereafter, section 12-13(a)(4) (720 ILCS 5/12-13(a)(4) (West 2008)) provides that the accused commits criminal sexual assault if he or she commits an act of sexual penetration with a victim who was at least 13 years of age, but under 18 years of age when the act was committed, and the accused was 17 years of age or over and held a position of trust, authority or supervision in relation to the victim. Both of these subsections would be almost entirely unnecessary if we were to follow the State's construction because evidence of the accused's knowledge of a victim's legal status as a minor, along with proof of sexual

penetration, would be enough to convict under section 12-13(a)(2). These two subsections also highlight that when the legislature wants to use the age of the victim as an element of the offense, it knows exactly how to do so. Of course, the legislature omitted any reference to the age of the victim in the subsection of the criminal sexual assault provision under which defendant was convicted.

¶ 38 Fourth, the State's construction would cause havoc to our statutory scheme by allowing, for example, the State to prosecute under the criminal sexual assault provision a 17-year-old girl who has sexual intercourse with her willing 16-year-old boyfriend, assuming that the State could prove, as it most certainly could, that she knew his age. This offense would constitute a Class 1 felony (720 ILCS 5/12-13(b)(1) (West 2008)) even though the legislature has determined elsewhere in the Code that such conduct would fall within the criminal sexual abuse provision (720 ILCS 5/12-15(c) (West 2008)), a Class A misdemeanor (720 ILCS 5/12-15(d) (West 2008)). Our legislature could not have intended such a result that would require a court to impose a sentence of years (730 ILCS 5/5-4.5-30 (West 2008)) for conduct it has specifically determined elsewhere in the Code constitutes a misdemeanor.

¶ 39 Finally, the criminal sexual assault provision under which defendant was convicted was added to the Code in 1984, and the language contained therein has never been amended. Compare Ill. Rev. Stat. 1985, ch. 38, ¶ 12-13(a)(2), with 720 ILCS 5/12-13(a)(2) (West 2008). Our research reveals that since this provision was enacted there has not been one reported case, prior to the appellate court decision here, in which the accused was prosecuted under section 12-13(a)(2) based solely upon evidence of his or her knowledge of the victim's legal status as a minor. The victims in previous cases prosecuted under this subsection have been found to be unable to understand the nature of the act or unable to give knowing consent because they were typically severely mentally disabled, highly intoxicated, unconscious, or asleep. See, *e.g.*, *People v. Vaughn*, 2011 IL App (1st) 092834, ¶¶ 38-39 (holding the evidence was sufficient to support a finding that the victim was unable to understand the nature of the acts or give knowing consent where on two separate occasions she was awakened to find her father in the midst of an unbroken series of sexual assaults); *People v. Fisher*, 281 Ill. App. 3d 395, 397-403 (1996) (holding the evidence was sufficient to support a finding that the victim was unable to give knowing consent where she consumed large quantities of alcohol during the evening of the assault, and evidence showed that she was unconscious prior to and during part of the sex act); *People v. Whitten*, 269 Ill. App. 3d 1037, 1039-42 (1995) (holding the evidence was sufficient to support a finding that the victim was unable to give knowing consent where the defendant was in a position of authority over the victim who was developmentally disabled with an IQ of 54); *People v. Weiss*, 263 Ill. App. 3d 725, 732-33 (1994) (holding the evidence was sufficient to support a finding that the victim was unable to understand the nature of the sexual acts or consent to them because he was severely mentally disabled and functioned at the level of a four-year-old child); *People v. Maloney*, 201 Ill. App. 3d 599, 611 (1990) (holding the evidence was sufficient to support a finding that the victim was unable to understand the nature of the sexual acts or give knowing consent where at the time of the incident the victim had a mental age of seven, and the defendant had ample opportunity to assess the victim's mental capacity prior to the assault); see generally *People v. Brown*, 2012 IL App (2d) 110303, ¶ 52

(recognizing that cases involving section 12-13(a)(2) of the Code have concerned allegations that the victims were mentally disabled, asleep, unconscious, drugged, or intoxicated). The cases relied upon by the State in its brief do not inform our determination, as none concern a prosecution under section 12-13(a)(2) where only evidence of the victim's age, and the defendant's knowledge of that age, was used to support the conviction.

¶ 40    For all these reasons, we hold that in order to meet its burden under section 12-13(a)(2), the State is required to show that the defendant knew that some fact prevented the victim's ability to understand the act, or give knowing consent to it, other than evidence that he knew of the victim's young age. As the case law illustrates, the State has successfully met this burden in the past by showing the accused knew the victim's state of mind prevented him or her from understanding the nature of the act, or from giving knowing consent, because the accused knew the victim was severely mentally disabled, intoxicated, asleep, or unconscious at the time of the act, and the evidence was not based solely on his or her knowledge of the victim's status as a minor. See, *e.g.*, *Vaughn*, 2011 IL App (1st) 092834, ¶ 39. Having concluded that in order to sustain defendant's convictions under section 12-13(a)(2), there must be evidence other than P.V.'s age, and defendant's knowledge of that age, we consider whether the evidence was sufficient to support his convictions under the facts of this case.

¶ 41                                             II

¶ 42    When considering a challenge to the sufficiency of the evidence in a criminal case, our function is not to retry the defendant. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). Rather, our inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Davison*, 233 Ill. 2d 30, 43 (2009). This means that we must allow all reasonable inferences from the record in favor of the prosecution. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). "We will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt." *People v. Collins*, 214 Ill. 2d 206, 217 (2005).

¶ 43    The State asserts that given the totality of the evidence in this case, even if P.V. was not "automatically" unable to understand the nature of the acts or give knowing consent based upon her age, a rational juror could have concluded that defendant knew she could do neither. The State argues that the evidence demonstrated that defendant knew that whatever consent P.V. gave was unknowing and invalid because the evidence indicated that she was immature, confused, and provided ambivalent responses to his advances. The State suggests that P.V.'s descriptions of her encounters with defendant also highlight her immaturity in that she felt uncomfortable using terms such as vagina or penis. The State also relies upon evidence that defendant knew the acts were illegal.

¶ 44    The record before us is completely devoid of any evidence to support a determination that defendant knew the victim was unable to understand the nature of the acts or give knowing consent to them to support his convictions under section 12-13(a)(2). The State relies upon evidence that defendant had known P.V. her entire life and would have known that she was in her early teens. The testimony relied upon by the State, including P.V.'s choice of words

at trial, was simply evidence of her young age, and defendant's knowledge of that age which, without more, was insufficient to support his convictions for the offenses as charged. As we have already determined, under our statutory framework, all 13-year-olds such as P.V. are viewed identically as being unable to consent to sexual conduct. Therefore, it makes no difference whether she was a mature or immature 13-year-old because she was incapable of giving legal consent to sexual conduct. The State also cites evidence that defendant told P.V. that she could not tell anyone about the encounters because, in essence, he could go to prison, and that she made him nervous because he was afraid that she was going to tell someone. Although defendant's statements indicate that he was likely aware that he should not be engaging in sexual activity with P.V., a minor, and that his conduct was generally against the law, it does not establish that he knew P.V. was unable to understand the nature of the acts, or give knowing consent to the sexual activity *for any reason other than her age*. For these reasons, we must reverse all seven counts of defendant's convictions.

¶ 45    The State presented sufficient evidence from which a rational trier of fact could have concluded that defendant committed aggravated criminal sexual abuse. See 720 ILCS 5/12-16(d) (West 2008). Unfortunately, the State chose not to charge him with that offense and, instead, decided to go forward only on the criminal sexual assault charges. In evaluating defendant's challenge to the sufficiency of the evidence under the circumstances in this case, we can only consider the evidence regarding the actual charges the State chose to bring against him, and not the fact that he may be guilty of the uncharged offense of aggravated criminal sexual abuse. In contrast to aggravated criminal sexual abuse, defendant's convictions for criminal sexual assault did not require, *inter alia*, a showing that he was at least five years older than the victim. *Id.* Therefore, the jury's verdict in this case did not include a finding that all of the elements of aggravated criminal sexual abuse had been proven beyond a reasonable doubt. Of course, we cannot substitute a conviction where the verdict on an uncharged offense would require a finding of guilt on an additional element that was not encompassed by any of the elements of the offense considered by the jury "no matter how inescapable the findings to support the verdict might be." *Sullivan v. Louisiana*, 508 U.S. 275, 279-80 (1993) ("to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support the verdict might be—would violate the jury-trial guarantee").

¶ 46    We reiterate that the criminal sexual assault provision under which defendant was convicted has existed in Illinois for close to 30 years, and there is no prior reported case in which a defendant was prosecuted under section 12-13(a)(2) based solely on the young age of the victim. Due to the significant consequences of the State's charging decision in this case, we stress the importance of the State carefully considering the offenses that it chooses to charge and prosecute in the future. We also find it more than unfortunate that the State chose to prosecute this case in a manner that required the minor victim, who was 14 years old at the time of trial, to answer questions as to her motivation or willingness to engage in sexual activity with defendant and about her sexual education. P.V. should not have been subjected to such questioning because our legislature, in protecting children from adults who prey upon their vulnerabilities, has determined that such considerations are entirely irrelevant.

¶ 47    CONCLUSION

¶ 48    For the foregoing reasons, we affirm in part and reverse in part the appellate court judgment and reverse the judgment of the circuit court. We reverse defendant's convictions on all seven counts of criminal sexual assault and vacate the sentences.

¶ 49    Appellate court judgment affirmed in part and reversed in part.

¶ 50    Circuit court judgment reversed.

¶ 51    Convictions and sentences vacated.

¶ 52    JUSTICE THOMAS, specially concurring:

¶ 53    I agree with Justice Theis's conclusion in her lead opinion that proof of the young age of the victim, standing alone, is not sufficient to prove a violation of section 12-13(a)(2) of the Code (720 ILCS 5/12-13(a)(2) (West 2008)). I also agree that the evidence presented at trial was not sufficient to prove the crime charged under the specific facts of this case. I disagree, however, with portions of Justice Theis's reasoning in reaching those results. Accordingly, I offer the following observations.

¶ 54    In this case, the State raised alternative arguments. First, the State maintained that even if the jury heard evidence proving only the victim's young age and defendant's knowledge of that age, then under the plain language of section 12-13(a)(2), these would be sufficient facts to prove defendant knew the victim was unable to understand the nature of the acts or give knowing consent. Second, the State argued that regardless of whether a 13-year-old is "automatically 'unable to understand the nature of the acts' or 'give knowing consent,' given the totality of the evidence in this case, a rational jury could have found beyond a reasonable doubt that [the victim] was unable to do either." I interpret the State's argument to mean (1) that a minor cannot consent to sexual activity as a matter of law and therefore if defendant is aware of the victim's young age, defendant is guilty as a matter of law of violating section 12-13(a)(2), and (2) that even if proof of young age alone is not sufficient to prove the crime as a matter of law, the victim's age, along with her maturity level, can be considered along with other facts and circumstances to prove the crime and that under the totality of the circumstances presented in this case, defendant was proven guilty. I believe that the State is partially correct on its second point. That is, the victim's young age should be one factor that can be considered along with her maturity level and the other facts and circumstances to prove whether defendant knew that the victim was unable to understand the nature of the act or to give knowing consent. In this case, however, the victim's maturity level, along with the other facts and circumstances, only showed that she understood the nature of the acts and factually consented to them.

¶ 55    I agree with Justice Theis's holding that "in order to meet its burden under section 12-13(a)(2), the State is required to show that the defendant knew that some fact prevented the victim's ability to understand the act, or give knowing consent to it, other than evidence that he knew of the victim's young age." *Supra* ¶ 40. I would find, however, that knowledge of the victim's especially young age (here just 13), combined with evidence that shows the

defendant's knowledge that the victim was especially immature or unknowledgeable about sexual matters, might be sufficient in the appropriate case to support a conviction under section 12-13(a)(2).

¶ 56    Justice Theis, on the other hand, states that it is of "no concern" whether the minor victim was immature or unknowledgeable about sexual activity because minors cannot consent in the first place to such sexual activity because, under section 12-16(d) of the Code (720 ILCS 5/12-16(d) (West 2008)), defendant's conduct was a crime[3] and that to allow prosecution under section 12-13(a)(2) would somehow "derail" the legislative determination that minors cannot consent. See *supra* ¶¶ 35-36. Justice Theis also maintains that questioning minor victims about their sexual knowledge and activity in order to obtain convictions against the perpetrators of crimes under section 12-13(a)(2) is an "unacceptable consequence." *Supra* ¶ 36. In the end, Justice Theis ends up significantly narrowing the language of the statute by rewriting it so that henceforth it can only apply to victims who are asleep, comatose because of drugs or alcohol or who are so mentally deficient that they are equivalent to a very small child. *Supra* ¶¶ 39-40. There are a number of problems with this judicial gloss placed on the statute.

¶ 57    First, the statutory language, which is the best indicator of legislative intent, contains no such restriction. Instead, section 12-13(a)(2) allows the State to proceed on two different theories: (1) where the defendant knows that the victim is *unable to understand the nature of the act*, or (2) where the defendant knows that the victim is *unable to give knowing consent*. 720 ILCS 5/12-13(a)(2) (West 2008). Our appellate court has said in regard to the first theory—"unable to understand the nature of the act"—that "merely demonstrating 'the victim understood the physical nature of sexual relations is not sufficient to establish that the victim comprehended the social and personal costs involved.' " *People v. Vaughn*, 2011 IL App (1st) 092834, ¶ 38 (quoting *People v. Blake*, 287 Ill. App. 3d 487, 493 (1997)).

¶ 58    *Vaughn* upheld the defendant's conviction based on the theory that the victim was unable to understand the nature of the act, relying on the victim's young age of 14 as one factor, even though there was no indication that she was mentally impaired, stating as follows: "We recognize that this theory of liability is often raised where the victim had a mental impairment; however, we are reminded that the trial court *assessed the victim during her testimony* and concluded that she was unable to understand the nature of the sexual acts." (Emphasis added.) *Vaughn*, 2011 IL App (1st) 092834, ¶ 38. *Vaughn* then concluded that the "[d]efendant has not demonstrated that, when viewed in a light most favorable to the State, the evidence was so unreasonable, improbable, or unsatisfactory to raise a reasonable doubt as to his guilt that [the victim] was unable to understand the nature of the sexual acts." *Id*.

¶ 59    The lead opinion lumps *Vaughn* into a category of cases that have applied section 12-13(a)(2) only where the victim was either mentally disabled, highly intoxicated, unconscious or asleep. See *supra* ¶ 39. But it is clear that in addressing the theory of "unable to

---

[3]Section 12-16(d) provides that "[t]he accused commits aggravated criminal sexual abuse if he or she commits an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age but under 17 years of age and the accused was at least 5 years older than the victim."

understand the nature of the sex acts," *Vaughn* did not rely upon any of the categories suggested by the lead opinion in the instant case.[4] Rather, *Vaughn* simply noted the victim's young age of 14, that the trier of fact had an opportunity to assess her testimony, and that her testimony, which the appellate court quoted (and which does not refer to any of the four categories suggested by the lead opinion here), was not so unsatisfactory that it raised a reasonable doubt as to the defendant's guilt in relation to the victim's inability to understand the nature of the sex acts.

¶ 60    In *Blake*, Justice Theis herself wrote the opinion of the appellate court that reached the same result as *Vaughn* on similar facts. *Blake*, 287 Ill. App. 3d at 488. There, Justice Theis specifically noted in her analysis reviewing the evidence presented that the victim was 13 years old and the defendant was 30 years old, thus strongly suggesting that the young age of the victim is one factor that may be taken into account in determining whether the victim understood the nature of the act. *Id*. at 493. In *Blake*, there was no evidence whatsoever presented that the victim was severely mentally disabled, highly intoxicated, unconscious or asleep. There was some evidence that the victim had a learning disability and was enrolled in special education classes. But there was no evidence presented as to the victim's cognitive level; the victim's mother testified only that the victim's learning disability "sometimes affected her ability to articulate her feelings." *Id*. Nonetheless, Justice Theis in *Blake* affirmed the trier of fact's verdict that the victim was unable to understand the nature of the act. *Id*.

¶ 61    I believe that *Vaughn* and *Blake* support my view that the State should be allowed to prove a crime under section 12-13(a)(2) by showing the victim's young age and that he or she is so immature or uninformed about sexual matters that he or she could not effectively understand the nature of the act. But the lead opinion in the present case overreaches by ruling that minors *per se* should not be subject to giving testimony about their maturity levels as to sex even where it appears to be germane to proving the statutory element of "unable to understand the nature of the act."

¶ 62    Second, while I too sympathize with any minor victim having to endure questioning about his or her understanding of the nature of the sex act or acts in question, I note that both the victim and the State (not to mention the public and the legislature) might well prefer such questioning over the alternative the lead opinion imposes of automatically limiting the prosecution to only charging a lesser, Class 2 felony under section 12-16(d), a probationable offense. It should not escape notice that as little as one day in the timing of when the act is committed can result in a wide disparity in the crime that can be charged and the corresponding sentencing options available. If defendant's conduct had been committed on

---

[4]The victim in *Vaughn* on two separate occasions awoke to find defendant engaged in an initial sex act that led to two other kinds of sex acts after the victim was awake. The court relied upon the fact that the victim "was awoken to find [the defendant] in the midst of the unbroken series of sexual assaults" as support for the finding that the victim was unable to give "knowing consent" to the sex acts. See *Vaughn*, 2011 IL App (1st) 092834, ¶ 39. But the court did not rely on the fact that the victim had initially been asleep in discussing the theory of whether the victim was unable to "understand the nature of the sexual acts." *Id*. ¶ 38.

a victim who had not yet turned 13 years of age, he would have been guilty of predatory criminal sexual assault of a child, a Class X felony carrying a mandatory prison term with a sentencing range of 6 to 60 years. See 720 ILCS 5/12-14.1(a)(1), (b)(1) (West 2008). Given this reality, it is doubtful that the lead opinion's interpretation of the statutory scheme is consistent with the legislative intent where that interpretation essentially prohibits prosecution under section 12-13(a)(2) of an adult perpetrator who has engaged in a sex act with a 13-year-old even where it appears that because of the victim's immaturity she may not have actually understood the nature of the act. At any rate, testifying at trial as a minor about a sex crime is undoubtedly a stressful situation. See *People v. Rabus*, 238 Ill. App. 3d 765, 769 (1992) (noting that trial is "undeniably a stressful situation"). But the legislature has already chosen the appropriate remedy by providing that a child victim of criminal sexual assault—which includes the crime charged here under section 12-13(a)(2)—may give their testimony outside of the courtroom by closed circuit television where the testimony would otherwise result in serious emotional distress. 725 ILCS 5/106B-5 (West Supp. 2012). The lead opinion usurps the legislature's determination and imposes its own remedy of essentially forbidding the charge from going forward at all where it is based on a particular 13-year-old's lack of maturity and knowledge about sexual activity.

¶ 63        Finally, the lead opinion's worry about the age-of-consent protections in section 12-16(d) being "derail[ed]" by allowing the State to present evidence of the victim's lack of maturity and knowledge for purposes of proving a charge under section 12-13(a)(2) makes no sense. See *supra* ¶ 35. No matter how this court interprets section 12-13(a)(2), everyone agrees that what occurred in this case is at the very least a Class 2 felony under section 12-16(d). The fact that defendant's actions are a crime under section 12-16(d) because a minor's consent under that section is irrelevant does not mean that a crime could not have been committed and proved under section 12-13(a)(2) where it is shown that the defendant knows "the victim is unable to understand the nature of the act."

¶ 64        I do agree, however, that if the State's argument based on age alone (the legal age of consent being 17) were accepted to prove a charge under section 12-13(a)(2) as a matter of law, it would render section 12-16(d) superfluous, as a zealous prosecutor could always simply bypass section 12-16(d) and charge the greater class felony of section 12-13(a)(2), even where the minor actually does understand the nature of the act and factually consents. This would indeed be an unacceptable result. But I advocate for a middle ground of allowing the State to show under section 12-13(a)(2) that the victim actually was "unable to understand the nature of the act," which proof can consist of age as a factor but not in isolation. Moreover, I note that it is axiomatic that the State was free to charge defendant under either statutory provision or both in this case. See *People v. Perry*, 224 Ill. 2d 312, 339 (2007) (the prosecutor has broad discretion to decide what charges to bring where two different statutes prohibit the criminal conduct in question but prescribe different punishments). My interpretation of the statutory language in section 12-13(a)(2) does not endanger the protections contained in the age-related sex offenses contained in the Code, while it also avoids doing violence to the plain statutory language. Finally, I would submit that what derailed the protection of the minor victim in this case was the State's failure to charge an additional count under section 12-16(d) of the Code, which it could have easily

proved, and where the particular evidence presented on the charge that was actually brought pursuant to section 12-13(a)(2) was fatally weak.

¶ 65         CHIEF JUSTICE KILBRIDE and JUSTICE KARMEIER join in this special concurrence.