2020 IL App (2d) 170920-U
No. 2-17-0920
Order filed March 24, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17-CF-554 |
| | ) | |
| RICARDO ORTIZ, | ) | Honorable |
| | ) | George J. Bakalis, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The State proved defendant guilty beyond a reasonable doubt of aggravated battery of a peace officer, as defendant knowingly made physical contact of an insulting or provoking nature by spitting on a police officer as he was trying to buckle defendant into the rear seat of the squad car.

¶ 2    Defendant, Ricardo Ortiz, appeals from the judgment of the circuit court of Du Page County finding him guilty of aggravated battery of a peace officer (720 ILCS 5/12-3.05(d)(4)(i) (West 2016)).  Contrary to his assertion, the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of knowingly spitting on a police officer.  We affirm.

¶ 3                                        I. BACKGROUND

¶ 4    Defendant was charged with one count of aggravated battery based on his knowingly spitting on a peace officer (720 ILCS 5/12-3.05(d)(4)(i) (West 2016)) and two counts of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(1), (a)(2) (West 2016)).  Defendant opted for a bench trial.

¶ 5    The following facts were presented at the trial.  At about noon on March 20, 2017, while driving in Wood Dale, defendant lost control of his vehicle.  The vehicle became stuck between a fire hydrant and a utility pole.  After unsuccessfully attempting to remove his vehicle, defendant walked away.

¶ 6    A few minutes later, defendant returned in a vehicle driven by a local mechanic.  After failing to remove the vehicle, the mechanic left.  Defendant then walked down the street.

¶ 7    As defendant was returning to the accident scene a second time, Officer Pedro Delgado of the Wood Dale Police Department arrived.  When Officer Delgado asked defendant about the accident, defendant denied knowing anything.  After talking with defendant and having him perform several field sobriety tests, Officer Delgado arrested defendant for DUI.

¶ 8    Officer Delgado and another officer attempted to put defendant in a squad car, but defendant kicked and resisted.  Officer Delgado described defendant as being "like a cat, you know, with his legs trying to keep [the officers] from getting him in the car."  The officers finally placed defendant in the backseat of the squad car and closed the door.

¶ 9    Sergeant Michael Peters of the Wood Dale Police Department arrived at the scene.  According to Officer Delgado, while he and Sergeant Peters were talking outside of the squad car, defendant was calling Sergeant Peters names.  Defendant also asked Sergeant Peters to open the door.

¶ 10    According to Officer Delgado, when Sergeant Peters opened the rear door of the squad car, defendant called Sergeant Peters offensive names.  At that point, Sergeant Peters noticed that defendant was not wearing a seatbelt.  As Sergeant Peters attempted to fasten the seatbelt, defendant gathered spit in his throat and spit on Sergeant Peters' vest and upper thighs.  Sergeant Peters then turned defendant's face away and told defendant that he did not have to spit on him.  Defendant responded that Sergeant Peters did not have to touch his face.

¶ 11    According to Sergeant Peters, as he leaned into the backseat to fasten the seatbelt, he saw defendant "puckering his lips to spit on [Sergeant Peters]."  Sergeant Peters tried to turn defendant's face away so that he could not spit on him.  Then, as Sergeant Peters continued to try to fasten the seatbelt, defendant spit on him.  Before defendant spit, Sergeant Peters could hear defendant gathering phlegm to do so.  The spit landed on Sergeant Peters' chest, stomach, and legs.  According to Sergeant Peters, if defendant had wanted to spit on the floor he could have done so without spitting on him.

¶ 12    A video recording taken from another squad car showed Sergeant Peters leaning into the backseat area of the squad car to hold defendant.  Sergeant Peters could be seen attempting to fasten the seatbelt.  As he did so, defendant could be heard calling Sergeant Peters "a bitch" and a racist, telling him not to touch his face, and threatening to break his jaw.  The video further showed Sergeant Peters trying to turn defendant's face away.  At one point, Sergeant Peters jumped back slightly and told defendant that he did not need to spit on him.  Defendant responded that he did not spit on Sergeant Peters but instead spit on the floor.  When Sergeant Peters told defendant not to spit on him again, defendant denied that he ever did.

¶ 13    In finding defendant guilty of aggravated battery, the trial court found that, given defendant's demeanor in the squad car, he had intended to spit on Sergeant Peters, as opposed to

on the floor. The court also found defendant guilty of DUI but directed a finding of not guilty as to DUI based on blood alcohol. The court sentenced defendant to three years' imprisonment on the aggravated-battery conviction. Defendant, in turn, filed this timely appeal.

¶ 14                                II. ANALYSIS

¶ 15     On appeal, defendant contends that his aggravated-battery conviction should be reversed, because the evidence did not prove beyond a reasonable doubt that he knowingly spit on Sergeant Peters.

¶ 16     A defendant commits aggravated battery by committing a battery against a person that he knows to be a peace officer performing his official duties. 720 ILCS 5/12-3.05(d)(4)(i) (West 2016). Battery is knowingly causing bodily harm to, or making physical contact of an insulting or provoking nature with, another person. 720 ILCS 5/12-3(a) (West 2016). The State must prove, as an essential element of battery, that the defendant's conduct was knowing or intentional. *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 42. A defendant acts knowingly when he is consciously aware of the nature of his conduct and that his conduct is practically certain to cause a particular result. 720 ILCS 5/4-5 (West 2016).

¶ 17     An appellate review of the sufficiency of the evidence asks whether, when the evidence is viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Belknap*, 2014 IL 117094, ¶ 67. The trier of fact has the responsibility to resolve conflicts in the testimony, weigh the evidence, and draw all reasonable inferences from the evidence. *People v. Lloyd*, 2013 IL 113510, ¶ 42. A reviewing court will not reverse a criminal conviction unless the evidence is unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 18    Before we assess the sufficiency of the evidence overall, we address defendant's argument, relying on *People v. Shaw*, 2015 IL App (1st) 123157, and *People v. Kotlinksi*, 2011 IL App (2d) 101251, that, because the video evidence was not live testimony, we must defer less to the trier of fact's evaluation of the video.  We disagree.

¶ 19    In *Shaw*, the defendant was convicted of armed robbery.  *Shaw*, 2015 IL App (1st) 123157, ¶ 1.  The evidence consisted of testimony and a surveillance video.  Although the trial court found that the video corroborated the essential elements of the offense, the appellate court disagreed.  *Shaw*, 2015 IL App (1st) 123157, ¶ 29.  In holding that the video, in part, rendered the testimony improbable, unconvincing, and contrary to human experience, the court noted that it was entitled to give less deference to nontestimonial evidence, such as a video.  *Shaw*, 2015 IL App (1st) 123157, ¶ 29 (citing *People v. Radojcic*, 2013 IL 114197, ¶ 34 (where State offered no live testimony, but only grand jury transcripts, the trial court did not occupy a position superior to the appellate court in evaluating the State's evidence)).

¶ 20    In *Kotlinski*, there was video evidence, along with testimony, regarding defendant's conduct at the scene of his wife's arrest.  *Kotlinski*, 2011 IL App (2d) 101251, ¶¶ 4-34.  On appeal, the defendant contended that review should be *de novo*, because the video established that the facts of the incident were undisputed.  *Kotlinski*, 2011 IL App (2d) 101251, ¶ 38.  In rejecting that contention, we explained that, although the video represented the best evidence of what occurred, there was testimony contrary to what the video depicted.  Thus, we applied the ordinary standard for assessing the sufficiency of the evidence.  *Kotlinski*, 2011 IL App (2d) 101251, ¶ 38.

¶ 21    Here, although the video is not entirely consistent with the testimony, it does not, as in *Shaw*, render it improbable, unconvincing, or contrary to human experience.  Instead, it corroborates the testimony.  Thus, consistent with *Kotlinski*, we consider the video, along with the

testimony, in the light most favorable to the prosecution in determining whether the evidence was sufficient to find defendant guilty beyond a reasonable doubt.

¶ 22    When we view the evidence in the light most favorable to the State, there was ample evidence to support the guilty finding. Both Officer Delgado and Sergeant Peters testified that they could hear defendant preparing to spit. They also testified consistently that defendant spit on Sergeant Peters' upper body and legs. Sergeant Peters also testified that, had defendant wanted to avoid spitting on him, he could have done so. Again, the video did not contradict, but rather corroborated, that testimony. The video showed that, as Sergeant Peters attempted to fasten defendant's seatbelt, he tried to turn defendant's face to prevent him from spitting on him. Suddenly, Sergeant Peters jumped back and told defendant he did not have to spit on him. More importantly, the video also showed that Sergeant Peters was standing in the open rear door and that there was ample room for defendant to spit on the floor without spitting on Sergeant Peters. The testimony of the two officers, combined with the video, supported a reasonable inference that defendant knowingly, as opposed to accidently, spit on Sergeant Peters.

¶ 23    Additionally, as the trial court noted, defendant's demeanor supported the finding that he knowingly spit on Sergeant Peters. The video shows that defendant appeared intoxicated. Indeed, the trial court found him guilty of DUI; a finding defendant does not challenge. Further, Officer Delgado testified that defendant physically resisted being placed in the squad car. Both Officer Delgado and Sergeant Peters testified that, after he was placed in the squad car, defendant called Sergeant Peters offensive names. The video corroborated that testimony, as defendant could be heard repeatedly calling Sergeant Peters a racist and a bitch. He could also be heard threatening to break Sergeant Peters' jaw. The evidence that defendant was intoxicated, resisted being placed

in the squad car, and used offensive and threatening language toward Sergeant Peters, bolstered the finding that he knowingly spit on Sergeant Peters.

¶ 24    Finally, defendant argues that his immediate denial of spitting on Sergeant Peters strongly suggests that he never meant to spit on him and that it would be contrary to human nature to purposely spit on a police officer and then immediately deny doing so. We disagree. It is reasonable to conclude that defendant knowingly spit on Sergeant Peters and then, recognizing the seriousness of that conduct, immediately denied the conduct. Moreover, the mere denial of any intent to spit on Sergeant Peters did not overcome the significant evidence that he did so knowingly.

¶ 25    When viewed in the light most favorable to the State, there was sufficient evidence that defendant knowingly spit on a peace officer. Thus, the trial court properly found defendant guilty of aggravated battery.

¶ 26                                   III. CONCLUSION

¶ 27    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 28    Affirmed.