NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 170441-U

NO. 4-17-0441

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 3, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| RICHARD L. HILL, | ) | No. 15CF980 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Steigmann and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The evidence was sufficient to prove defendant guilty of criminal sexual abuse beyond a reasonable doubt.

¶ 2    In March 2017, following a bench trial, defendant, Richard L. Hill, was found guilty of criminal sexual abuse (720 ILCS 5/11-1.50(a)(1) (West 2014)). Defendant asserts the evidence presented by the State was insufficient to convict him. We disagree and affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On July 7, 2015, the State charged defendant by information with one count of criminal sexual abuse. 720 ILCS 5/11-1.50(a)(1) (West 2014). The information charged that defendant "committed an act of sexual conduct with [M.B.] in that the defendant, by the use of force, knowingly pressed his penis into her buttocks for the purpose of the sexual arousal of the

defendant."

¶ 5 The case proceeded to a bench trial on February 16, 2017.

¶ 6 The State's first witness was the victim, M.B. M.B., who was 20 years old at the time of trial, testified that in the early evening of April 19, 2015, she was at the home of Tina Baker, the cousin of M.B.'s then-boyfriend, "hanging out with friends." Defendant arrived at Baker's home a short time later. M.B. had seen defendant several times at M.B.'s boyfriend's "family events" but had not had extensive interaction with him prior to that evening.

¶ 7 M.B. testified that over the course of the evening, she mentioned that she was having trouble with her car. At one point, defendant informed M.B. that he "works on cars" and could try to repair M.B.'s car at his "shop."

¶ 8 According to M.B., she and defendant left Tina Baker's home in separate vehicles at approximately 9 or 10 p.m. M.B. followed defendant to his rental storage unit. Defendant opened the door to the storage unit, and M.B. parked her car in front of the opening while defendant "got the machine and stuff." Inside the storage unit was "another car" and "some stuff to work on cars." M.B. remained in her vehicle while defendant "hooked something up to [M.B.'s] car." After a few minutes, defendant told M.B. that there was a room in the back of the storage unit and "[she] could go in there [so she] didn't have to sit in the cold."

¶ 9 M.B. testified that she went into the room to wait for defendant to finish. M.B. described the room as containing a table, a window, a light, and a chair by the door to the room. While she waited, she was "texting [her] boyfriend." Defendant entered the room periodically, each time saying, "it would be a few minutes, that he had to hook it up and he was running something on the car."

¶ 10        M.B. testified that after around ten minutes, defendant entered the room, sat down in the chair, shut the door, and turned off the light so that "[t]he only light coming through was the one from the window." M.B. asked defendant why he turned the light off. According to M.B., defendant said that "[she] was too much of a woman for [her] boyfriend and that [she] needed a man." M.B. testified defendant then approached where she was standing, "stopped behind [her]," "started rubbing [her] hips" with his hands, and told her she "needed a man, a mandingo in [her] life." M.B. asked defendant "why he was touching [her]," and he responded that "he like[d] touching [her]." M.B. testified she did not tell defendant to stop because she "was scared."

¶ 11        M.B. testified she felt defendant "messing around with his belt buckle and stuff and his pants, the buttons, the zipper." M.B. then felt defendant "rubbing his genitals on [her]." Defendant kept "his hands on the side of [her] hips" even while he rubbed his genitals against her. At this point, M.B. "stepped to the side." M.B. testified that defendant then "went by the door" and "sat down." M.B. moved to turn the lights back on and exit the room. Defendant turned the lights off again and grabbed M.B. by the wrists, "trying to pull [her] closer to him." M.B. testified that she asked defendant to "let [her] go" and that he responded, "wait a few minutes" and "your car [is] not even done." Defendant "kept a tight grip on [M.B.'s] arm until [she] kind of yelled at him and asked him to let [her] go, kind of screamed." Defendant then released her, turned on the light, and exited the room.

¶ 12        M.B. immediately began calling and texting people to tell them what had happened. M.B. then got into her car. Defendant "unhooked" M.B.'s car and "put everything back together and closed [the] hood." Defendant came around to the driver's window and said, "the car should be fine and if it needed anything else *** he'd take a look at it another night." M.B. left the garage

and returned home.

¶ 13        M.B. subsequently called Tina Baker and her boyfriend. When she arrived back at her home, M.B. recounted her story to her mother, brother, and boyfriend. She then called the police.

¶ 14        On cross-examination, M.B. denied consuming any alcohol at the home of Tina Baker. She also admitted that she "could have left the [storage unit] any time[.] [She was not] locked in[.]"

¶ 15        The State next called Jonathan Rieches of the Champaign County Sheriff's Office. Rieches responded to M.B.'s 9-1-1 call on April 19. M.B. was unable to provide Rieches with an address where the incident had occurred, but she agreed to take him there. Riches testified that "[M.B.] was upset" and that she appeared to be "genuinely distressed" and "upset about what had occurred."

¶ 16        The State's last witness was Dwayne Roelfs of the Champaign County Sheriff's Office. Roelfs testified that he conducted an interview with defendant on April 22, 2015. The State introduced into evidence a video recording of the interview between Roelfs and defendant.

¶ 17        During the interview, Roelfs began by asking defendant what he had done on the evening of April 19, 2015. Defendant replied that he was "working on [Tina Baker's] car." According to defendant, after he finished with Tina Baker's car, Baker's friend "asked [him] to look at her car." Defendant gave the friend a quote and his business card, and a short while later, "everyone left." Defendant said that he "didn't even know [the] name" of Baker's friend to whom he had given his business card. When Roelfs showed defendant a photo of M.B., defendant identified her as Baker's friend to whom he had given the quote. Defendant said that M.B. had

"never in her life been in [defendant's] shop" and that defendant himself had not been in his shop for "over a week" prior to the interview.

¶ 18 Later in the interview, defendant changed his story, admitting "[M.B.] did come down to the shop, but she didn't come into my shop." Defendant stated that "[M.B.] actually was asking [defendant] questions" of a sexual nature. Defendant claimed he and M.B. were "flirting back and forth." Defendant said that M.B. was "on the phone," saying "he a sexy chocolate, but he's too old for me" and "he look like a mandingo warrior." Defendant admitted to some contact between himself and M.B. Defendant claimed that M.B. "walked past" him and might have "bumped up against [him]," but there was no "hands on, hands off, none of that" and "[defendant] never put [his] hands on her." Defendant denied that he rubbed himself against her. According to defendant, when M.B. left that night, she "said thank you" and defendant "gave her [his] card."

¶ 19 Defendant testified on his own behalf. He testified that he was 44 years old. He stated that at around 5 p.m. on April 19, 2015, he received a call from Tina Baker because she "needed some work on a car." While defendant looked at Baker's car, "another female ask[ed him] about her vehicle." Defendant later testified that the "friend" was M.B. Defendant testified that he looked at M.B.'s car and "told her [she] would have to bring it down to the shop to put it on the machine to see what was wrong with it." Defendant claimed that when he and M.B. arrived at defendant's shop, he "grabbed [his] computer, came back outside[,] *** hooked it up to the car" and "fill[ed] the car with fluids." The whole process took "no more than five or ten minutes." While defendant worked, M.B. was "on the phone talking with somebody" and "every few minutes, she'd have a little comment." Defendant stated that while M.B. was talking to the person on the phone, she referenced defendant using words like "chocolate" and "mandingo." Defendant

testified he "never even was close enough to [M.B.] to stand by her" and he never "mess[ed] around with [his] belt buckle or drop[ped his] pants or expose[d himself]."

¶ 20    At the conclusion of the evidence, the trial court found defendant guilty of criminal sexual abuse and sentenced him to 24 months' sex offender probation.

¶ 21    This appeal followed.

¶ 22                    II. ANALYSIS

¶ 23    On appeal, defendant's sole contention is that "[n]o rational trier of fact could have found that [defendant] accomplished his act of sexual conduct through physical compulsion or the threat of physical compulsion, *i.e.*, by the use of force or threat of force." See 720 ILCS 5/11-1.50(a)(1) (West 2014).

¶ 24    When considering a challenge to the sufficiency of the evidence in a criminal case, the function of the reviewing court is not to retry the defendant. *People v. Lloyd*, 2013 IL 113510, ¶ 42, 987 N.E.2d 386. Instead, the reviewing court must determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Id.* Under this standard of review, the trier of fact is tasked with resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from the facts. *People v. Howery*, 178 Ill. 2d 1, 38, 687 N.E.2d 836, 854 (1997) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The reviewing court may not reverse a conviction "unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt." (Internal quotation marks omitted.) *Lloyd*, 2013 IL 113510, ¶ 42. This is true whether an appeal arises from a bench trial or a jury trial. *People v. Brown*, 2013 IL 114196, ¶ 48, 1 N.E.3d 888.

¶ 25    Defendant was convicted of criminal sexual abuse under section 11-1.50(a)(1) of the Criminal Code of 2012 (720 ILCS 5/11-1.50(a)(1) (West 2014)). The relevant portion of that statute provides that a person commits criminal sexual abuse if the person "commits an act of sexual conduct by the use of force or threat of force[.]" 720 ILCS 5/11-1.50(a)(1) (West 2014). The term "sexual conduct" is defined as

"any knowing touching *** by *** the accused, either directly or through clothing, of the sex organs, anus, or breast of the victim *** for the purpose of sexual gratification or arousal of *** the accused." 720 ILCS 5/11-0.1 (West 2014).

On appeal, defendant does not argue that rubbing his penis against M.B.'s buttocks does not constitute sexual conduct, nor does he argue that the State failed to prove sexual conduct. Rather, defendant argues the State failed to establish the sexual conduct was accomplished "by the use of force or threat of force."

¶ 26    The term "force or threat of force" is defined as follows:

"the use of force or violence or the threat of force or violence, including, but not limited to, the following situations:

(1)    when the accused threatens to use force or violence on the victim or on any other person, and the victim under the circumstances reasonably believes that the accused has the ability to execute that threat; or

(2)    when the accused overcomes the victim by use of superior strength or size, physical restraint, or physical confinement." 720 ILCS 5/11-0.1 (West 2014).

When considering the evidence of force, we may consider the size and strength of the defendant

and the victim as well as the place and conditions under which the incident occurred. *People v. Gonzalez*, 2019 IL App (1st) 152760, ¶ 38.

¶ 27 Here, a rational trier of fact could have found, beyond a reasonable doubt, that defendant used force or the threat of force in committing an act of sexual conduct against M.B. by physically confining her in the back room of his storage unit. Our decision is guided by two similar cases, *People v. Satterfield*, 195 Ill. App. 3d 1087, 552 N.E.2d 1382 (1990), and *Gonzalez*, 2019 IL App (1st) 152760.

¶ 28 In *Satterfield*, the defendant was found guilty of criminal sexual abuse. *Satterfield*, 195 Ill. App. 3d at 1090. In that case, the defendant approached the victim in the parking lot of a veterinary office while the victim was seated on the passenger side of her mother's car and crying about her injured dog. *Id.* at 1091. The defendant opened the car door and told the victim not to worry about her dog. *Id.* When the victim continued to cry, the defendant "poked [her] breast." *Id.* at 1092. The victim testified that she was prevented from "do[ing] anything" because the defendant "was in the door and [she] had a dog on [her] lap and [her] mom was sitting next to [her]." *Id.* The appellate court upheld the defendant's conviction, finding that the victim had nowhere she could move to avoid the defendant's advances and "virtually was pinned in the car" and thus "physically confined." *Id.* at 1097.

¶ 29 In *Gonzalez*, the defendant was found guilty of multiple counts of aggravated criminal sexual abuse and criminal sexual assault. *Gonzalez*, 2019 IL App (1st) 152760, ¶ 1. In that case, the defendant approached two 13-year-old girls and told them "they could make money modeling." *Id.* ¶¶ 4, 13. The defendant asked the victims if he could take pictures of them in his car. *Id.* ¶ 13. He took the first victim to his car, took some photographs of her, and then pulled

down the victim's shorts, "spread her legs," and " 'touched [her] vagina area.' " *Id.* ¶ 14. After the victim slapped the defendant's hand, he "lifted her shirt" and "touched her breasts." *Id.* The victim tried to leave, but "the doors were locked, and [the] defendant blocked her with his arm when she tried to get out of his car." *Id.* The victim was eventually able to get out of the car. *Id.* The second victim then approached the defendant's car. *Id.* ¶ 19. The defendant took some photographs of the second victim and then put his hand inside her shorts and touched her vagina. *Id.* ¶ 20. The victim tried to exit the car, but the defendant "blocked the door with his body." *Id.* ¶ 21. The victim was eventually able to get out of the vehicle. *Id.* The court found the evidence presented established force or threat of force. *Id.* ¶ 39. Citing *Satterfield*, the court noted:

> "The evidence established that defendant, a 35-year-old adult man, approached [the victims], who were 13 years old, told them they could make money from modeling, and gave them his business card. He then led each of them separately to sit in the backseat of his vehicle, committed sexual acts, and blocked them when they tried to leave, from which the jury could reasonably infer that defendant overcame [the victims] by physical confinement." *Id.*

The court further noted:

> "Although there was no testimony about defendant's size or weight, the victims were 13-year-old girls and defendant was a 35-year-old man, who brought them separately into the backseat of his vehicle, committed sexual acts against them, and then blocked them from leaving when they tried to leave. The jury had the opportunity to view the victims and defendant at trial and could have properly considered the size disparity when viewing [the victims'] testimony and hearing

their testimony about the sexual acts and conditions under which they took place." *Id.* ¶ 41.

¶ 30       In the present case, defendant, who was over 40 years old at the time of the incident, and M.B., who was in her late teens at the time of the incident, met at a storage unit late in the evening. Defendant convinced M.B. to wait in a room in the rear of his storage unit while he worked on her car. While M.B. waited in the room, defendant periodically entered the room and informed M.B. that her car was not yet ready. When defendant entered the room the third time, he sat down in the chair that was next to the door, the only exit from the room. Defendant shut the door and turned off the light so that the room was completely dark except for whatever light shone through the room's single window. Defendant, who was positioned between M.B. and the door, then approached M.B., saying things of a sexual nature and began rubbing her hips. Eventually, he began to rub his penis against her. After M.B. moved away from defendant, he again sat down in the chair. When M.B. approached the door and turned on the lights, defendant turned them off again, grabbed her wrists, attempted to pull her closer to him, and refused to let her go despite her pleas. After M.B. yelled, defendant finally released her and exited the room.

¶ 31       Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that defendant physically confined M.B. through force or threat of force. The record supports the inference that M.B. was confined in the room given defendant's position adjacent to the door, his shutting the door and turning off the lights, and his act of grabbing M.B.'s wrists after she stepped away from him.

¶ 32       We find the evidence was sufficient to establish force or use of force where defendant overcame M.B. by physical confinement. Accordingly, we find that the evidence was

sufficient for the trial court to have found defendant guilty of criminal sexual abuse.

¶ 33                                        III. CONCLUSION

¶ 34            For the reasons stated, we affirm the trial court's judgment.

¶ 35            Affirmed.