2021 IL App (1st) 191925-U

No. 1-19-1925

June 9, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 2133 |
| | ) | |
| MICHAEL WHITAKER, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

ORDER

¶ 1    *Held*: Defendant's conviction for possession of a controlled substance with intent to deliver is affirmed where the evidence was sufficient to prove intent.

¶ 2    Following a jury trial, defendant Michael Whitaker was convicted of possession of a controlled substance with intent to deliver, and sentenced to four months in the Cook County Department of Corrections and two years' probation. On appeal, defendant argues that the State failed to prove beyond a reasonable doubt that he had the intent to deliver. We affirm.

¶ 3 Defendant was charged by indictment with multiple counts of possessing controlled substances with intent to deliver. Before trial, the State nol-prossed all counts but one which charged defendant with knowingly possessing between 1 and 15 grams of a substance containing cocaine with intent to deliver (720 ILCS 570/401(c)(2) (West 2016)).

¶ 4 At trial, Chicago police officer Darryl Bowen testified that he was part of a narcotics unit that executed a search warrant at a home on the 7000 block of South Paulina Street, in Chicago, at approximately 12:22 p.m. on December 29, 2017. Officers encountered two or three people in the living room and immediately detained them. Bowen and another officer continued to a bedroom, where they encountered defendant, whom Bowen identified in court, alone and sitting on the bed. Defendant stated that there was a firearm in a drawer. Bowen detained defendant and brought him to the kitchen, where defendant stated that he had "rocks" and a firearm in the bedroom. Bowen gave custody of defendant to Officer John Fazy.

¶ 5 An evidence officer, Morris Guerin, photographed the residence, and officers then searched it. In the dining room, Bowen discovered a letter from the Social Security Board addressed to defendant at the residence's address. At trial, Bowen identified a photograph of the bedroom and the letter addressed to defendant, both of which are in the record on appeal.

¶ 6 On cross-examination, Bowen testified that, besides defendant, there were three adults and two children in the residence, but Bowen did not recall who was in the living room when he entered. Bowen's firearm was drawn when he entered the bedroom. He patted defendant down and did not recover anything. Bowen denied that defendant told Bowen he had a valid Firearm Owners Identification (FOID) card, and Bowen never observed one. Defendant's statement that he had some "rocks" was not recorded. The letter addressed to defendant was dated September 30, 2015.

¶ 7    On redirect examination, Bowen testified that he immediately holstered his firearm when he saw defendant in the bedroom. Bowen thought defendant was nervous because he was shaking and his voice trembled. Bowen believed defendant's reference to "rocks" meant crack cocaine. On recross examination, Bowen testified that defendant mentioned the firearm while Bowen handcuffed him and patted him down.

¶ 8    Fazy testified that he announced the officers' presence outside the residence. When there was no response, another officer opened the inner door with a ram. Fazy held the outer door open and then followed the other officers into the home.

¶ 9    Two men were being detained in the living room when Fazy entered. Fazy proceeded to a hallway, where he saw Bowen and another officer bringing defendant out of a bedroom. Fazy identified defendant in court. Defendant stated that there were "rocks" and a firearm in his bedroom. Bowen left the area, and Guerin approached Fazy and defendant in the hallway. Defendant gave Guerin four sandwich bags, each containing two rocks of suspect crack cocaine, from inside his sweatpants.

¶ 10    Officer John Thompson then transported defendant to the police station, where Fazy and Thompson performed a custodial search. The officers patted defendant down and asked him to sit, raise his sweatpants, remove his socks, and roll up his long underwear. When defendant complied, Fazy observed a knotted plastic bag with a white rock of suspect crack cocaine in each corner. Fazy identified the bag and white rocks in court.

¶ 11    Later, Fazy advised defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and defendant agreed to speak. Defendant stated that it was his bedroom, he "smokes rocks," and the narcotics were "14," referencing their weight, which he did not think was "a lot."

¶ 12    On cross-examination, Fazy stated that defendant was handcuffed when Fazy first observed him and he did not see Bowen or another officer pat defendant down. The officers did not recover anything from defendant when they patted him down.

¶ 13    Defendant was handcuffed behind his back, but retrieved the suspect narcotics he gave Guerin from inside his waistband. Defense counsel noted that Fazy pointed to the front of his thighs. The State added that Fazy then stood, put both hands behind his back, and moved them from one side of his waistband to the other. Fazy did not know if defendant retrieved the suspect narcotics from the front or back of his waistband. Thompson was wearing a body camera when he recovered the narcotics at the police station, but the camera was not activated. Fazy's interview of defendant was not recorded and defendant did not give a handwritten statement. On redirect examination, Fazy testified that defendant's charges did not require his interview to be videotaped.

¶ 14    Guerin testified that he had made over 1000 narcotics-related arrests in his career. He saw defendant, whom he identified in court, during the search of the residence. Another officer searched a bedroom and directed Guerin to a large bag of suspect cocaine and a firearm. Guerin identified several photographs that were published at trial and are included in the record on appeal, including the photograph of the bedroom. Guerin recovered two plastic bags from the shelf of a television stand. One bag was large and contained a chunk of suspect crack cocaine, and the other bag was smaller and knotted with a smaller chunk of suspect cocaine. Guerin identified a photograph of the shelf with the narcotics. Guerin also identified the bags of suspect narcotics, and agreed that it was a "large amount" not suitable for personal use.

¶ 15    Guerin also recovered a firearm and magazine from a dresser. Guerin identified a photograph of the dresser, which depicts an open drawer containing a firearm, separate magazine,

and ammunition. The firearm, which Guerin identified at trial, was operable. Guerin further recovered $300 cash and a wallet from a chair behind the bedroom door. Guerin identified a photograph of the wallet, which contained a FOID card and a state identification card. Guerin further identified the cards, which had defendant's name and listed the residence as his address.

¶ 16    Guerin also recovered more bags and a digital scale, which he identified in court, from a shoebox under a table in the living room, and a bottle of Dormin from the pantry. Guerin further identified photographs of the shoebox, and explained that the sandwich bags were consistent with those used to package narcotics; rocks are put in the corners of the bag and the bag is then twisted so the corners can break off and be sold.

¶ 17    While in the hallway outside the bedroom, defendant gave Guerin four bags from within his pants that each contained two rocks of suspect crack cocaine. Guerin identified the bags. The narcotics were packaged for sale in bags like those Guerin had recovered. Another knotted bag with two suspect crack cocaine rocks was recovered from defendant at the police station, and Guerin identified the bag and rocks.

¶ 18    On cross-examination, Guerin testified that other people were in the living room where the shoebox was recovered. Guerin did not photograph the suspect narcotics defendant gave him outside the bedroom or the suspect narcotics recovered from him at the police station. Defendant's FOID card was issued in 2015 and valid at the time of his arrest, and his state identification was issued in 2011.

¶ 19    On redirect examination, Guerin testified that the large rock of suspect cocaine recovered from the bedroom was not packaged in the knotted plastic bags like the smaller rocks, and that the purpose of having a large rock is to break off smaller pieces that are packaged for distribution in

the manner the other narcotics were packaged. No suspect cocaine was recovered anywhere but the bedroom and defendant's person.

¶ 20    Chicago police officer Laura Pagan testified that she entered the residence with the narcotics team and saw defendant, whom she identified in court, near the kitchen. Pagan searched the pantry and discovered a bottle of Dormin. Defendant told her that "the rocks and the gun were his and he knows how to cook it up and that he was just trying to get back to Tennessee." Pagan understood that "cook it up" meant to make crack cocaine. On cross-examination, Pagan denied that she had asked defendant anything before he made the statement.

¶ 21    The State entered a stipulation that a forensic chemist would testify that the substances recovered from the bedroom tested positive for 13.2 grams of cocaine, the substances defendant gave Guerin tested positive for 1.2 grams of cocaine, and the substances recovered from defendant at the police station tested positive for 0.1 grams of cocaine.

¶ 22    The defense called Thompson, who testified that he assisted the execution of the search warrant. Thompson parked in an alley behind the residence, and defendant, whom he identified in court, was handcuffed and passed to him to transport to the police station. Prior to placing defendant in his vehicle, he searched defendant for weapons. Thompson wore a body camera and did not recall if he recorded the search, but recorded transporting defendant to the police station and placing him in a secure room. Thompson estimated his camera was recording for 30 minutes. Thompson did not recover any narcotics from defendant while his camera was recording, but recovered narcotics from defendant later.

¶ 23    On cross-examination, Thompson testified that, while searching defendant at the police station with Fazy, he recovered a sandwich bag with two knotted ends which fell to the floor when defendant removed his shoes or socks.

¶ 24    Defendant testified that, on December 29, 2017, he lived on the 5100 block of South King Drive. The residence on the 7000 block of Paulina was his grandparents' home, and he had not lived there since about 2011. Defendant was at the home on December 28 and 29, 2017, to help his aunt move. He brought his firearm, and placed it in a drawer in his recently-deceased cousin's room, where he was staying. He did not know there was cocaine at the residence and denied giving cocaine to any police officers. He was unable to reach in his waistband to give narcotics to any officer, and he was wearing pajama pants which would not hold narcotics. On cross-examination, defendant testified that his belongings, including his wallet, bag, and firearm, were in his cousin's bedroom.

¶ 25    Following closing arguments, the jury found defendant guilty. The court denied defendant's motion for a new trial. Following a hearing, the court sentenced defendant to four months in the Cook County Department of Corrections and two years' probation.

¶ 26    On appeal, defendant argues that the evidence was insufficient because the State failed to prove that he had the intent to deliver. Defendant requests we reduce his conviction to possession of a controlled substance because the quantity, packaging, and purity of the narcotics, and his possession of a firearm and cash, did not establish his intent to deliver the narcotics.

¶ 27    When a defendant challenges the sufficiency of the evidence, we review whether, considering the evidence in the light most favorable to the State, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *People v. Brown*, 2013 IL

114196, ¶ 48. We draw all reasonable inferences in favor of the prosecution. *People v. Lloyd*, 2013 IL 113510, ¶ 42. The trier of fact is responsible for fairly resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Brown*, 2013 IL 114196, ¶ 48. Accordingly, we will not substitute our judgment for the trier of fact's on issues such as the weight of the evidence or the witnesses' credibility, and will only reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of the defendant's guilt. *Id.*

¶ 28    To prove a defendant guilty of possessing narcotics with intent to deliver, the State must establish that he knew of the narcotics, had immediate possession or control of the narcotics, and intended to deliver them. *People v. Ellison*, 2013 IL App (1st) 101261, ¶ 13. Here, defendant challenges only the third element, that he intended to deliver the cocaine.

¶ 29    A defendant's intent to deliver is most often proved by circumstantial evidence, and the reviewing court examines the nature and quantity of the circumstantial evidence to determine if it supports an inference of the defendant's intent to deliver. *Id.* ¶ 14. Factors considered include (1) whether the quantity of drugs is too large to be viewed as for personal consumption; (2) the drugs' purity; (3) the possession of weapons; (4) the possession and amount of cash; (5) the possession of police scanners, beepers, or cell phones; (6) the possession of paraphernalia associated with drug transactions; and (7) how the drugs are packaged. *Id.* These factors are not exhaustive. *Id.* The minimum evidence required to affirm a conviction for possession with intent to deliver is (1) that the drugs were packaged for sale, and (2) at least one additional factor tending to show the intent to deliver. *People v. Blakney*, 375 Ill. App. 3d 554, 559 (2007).

¶ 30    We conclude that, viewed in the light most favorable to the State, the evidence is sufficient to sustain defendant's conviction. At the house, officers found defendant in a bedroom that he stated was his own, and where he testified he was staying for two days. In the bedroom, Guerin recovered a large bag containing a chunk of crack cocaine, and a smaller, knotted bag with a smaller chunk of cocaine, and testified that the amount was too large for personal use. Guerin also recovered $300 cash, a firearm, magazine, and ammunition. Under a table in the living room, Guerin recovered a shoebox containing a scale and bags consistent with ones commonly used to package drugs for sale by knotting and removing the corners, and from the pantry, a bottle of Dormin. Guerin testified that defendant also gave him four knotted bags, each containing two rocks of crack cocaine, and Thompson recovered another knotted bag with two crack cocaine rocks from defendant at the police station. In total, officers recovered over 14 grams of cocaine in seven bags.

¶ 31    The way the cocaine was packaged, namely, in seven bags, including five on defendant's person, knotted in a manner consistent with narcotics transactions, is evidence from which a rational trier of fact could conclude that the narcotics were packaged for sale. The State therefore needed to prove only one additional factor. *Blakney*, 375 Ill. App. 3d at 559. Again viewing the evidence in the light most favorable to the State, the additional factors could be satisfied by Guerin's testimony that the quantity of cocaine in the bedroom was too large for personal consumption, defendant's possession of a firearm and $300 cash, and the scale and additional bags in the shoebox and Dormin in the pantry. See *Ellison*, 2013 IL App (1st) 101261, ¶ 14.

¶ 32    Defendant argues that the amount of cocaine recovered was not inconsistent with personal use and its packaging did not indicate it was meant to be sold. In doing so, he compares his case to *Ellison*, where the defendant was convicted of possession with intent to deliver after officers

recovered from his person 3.112 grams of cocaine packaged in 17 separate bags and approximately 0.4 grams of heroin packaged in 3 separate bags. *Ellison*, 2013 IL App (1st) 101261, ¶¶ 6, 8. In *Ellison*, we reduced the defendant's conviction to simple possession because there was no evidence that the amount of narcotics was inconsistent with personal use or of the purity of the drugs or the significance of the packaging, and the defendant did not possess cash or paraphernalia associated with drug sales. *Id.* ¶¶ 15, 27.

¶ 33    In contrast, here, Guerin testified that the amount of cocaine in the bedroom was inconsistent with personal use and the cocaine on defendant's person was packaged for sale. Moreover, a firearm and $300 were found in the bedroom, and paraphernalia associated with drug transactions, including more bags and a scale, was recovered from the living room. While there was no evidence of the cocaine's purity, defendant possessed a valid FOID card, and other people were in the living room where the scale and bags were recovered, we view the circumstantial evidence as a whole, and in the light most favorable to the State. See *People v. Pittman*, 2014 IL App (1st) 123499, ¶ 20 (affirming conviction despite absence of evidence regarding purity of drugs, money, weapon, police scanner, or other paraphernalia). Further, defendant cites no authority suggesting that the FOID card makes his possession of a firearm irrelevant to his intent to distribute the cocaine, and, given the testimony that the amount of cocaine was unsuitable for personal use and defendant's possession of $300 cash, there was evidence of other factors which, along with the cocaine's packaging, could establish defendant's intent to deliver. See *Blakney*, 375 Ill. App. 3d at 559.

¶ 34    Defendant further compares his case to *People v. Thomas*, 261 Ill. App. 3d 366, 369-71 (1994) (insufficient evidence of intent to deliver where defendant was found, near loaded shotgun,

placing 5.5 grams of cocaine in 27 packets, but there was no evidence he possessed significant amount of cash or scale or had handled shotgun); *People v. McLemore*, 203 Ill. App. 3d 1052, 1055-57 (1990) (insufficient evidence of intent to deliver where defendant possessed 3.3 grams of cocaine in 15 packets and several $100 bills, but no evidence amount was too great for personal consumption or that defendant possessed weapon or drug paraphernalia); and *People v. Crenshaw*, 202 Ill. App. 3d 432, 436-37 (1990) (insufficient evidence of intent to deliver where defendant possessed 11.2 grams of cocaine in 22 separate packets, no paraphernalia, and evidence did not establish ownership of vehicle in which defendant and weapon were found or amount of cash defendant possessed).

¶ 35    However, in addition to being factually distinguishable, we have noted that our supreme court has "seriously questioned and probably repudiated" those cases. *Blakney*, 375 Ill. App. 3d at 558 (citing *People v. Robinson*, 167 Ill. 2d 397, 412 (1995)). In *Robinson*, the defendant possessed 2.2 grams of PCP in 4 packets and 2.8 grams of cocaine in 36 packets. *Robinson*, 167 Ill. 2d at 413. The court found that the narcotics' packaging, anonymous tips that drug transactions occurred at the apartment where defendant was arrested, and high traffic at the apartment, was sufficient to establish the defendant's intent to deliver (*id.* at 413-15), despite that the circumstantial evidence was less than, *inter alia*, *Thomas*, *McLemore*, and *Crenshaw* (*id.* at 412). See also *People v. Beverly*, 278 Ill. App. 3d 794, 800-01 (1996) (analyzing *Robinson* and noting that *Robinson* suggested there was sufficient evidence to sustain convictions in *Thomas*, *McLemore*, and *Crenshaw* and called into question those and similar cases).

¶ 36    Therefore, where Guerin testified that the quantity of cocaine was inconsistent with personal use, the knotted bags containing smaller rocks were consistent with drug transactions,

more bags were recovered in a box with a scale, and defendant possessed a weapon, defendant's reliance on *Thomas*, *McLemore*, and *Crenshaw* is unavailing. Likewise, we are not persuaded by defendant's reliance on *People v. Sherrod*, 394 Ill. App. 3d 863 (2009), where the defendant's conviction was reduced to simple possession when he possessed 1.8 grams of cocaine in 17 bags, because, in that case, there was no testimony that the amount of narcotics was too great for personal consumption and there was no evidence of any other factors. *Sherrod*, 394 Ill. App. 3d at 866-68.

¶ 37    Ultimately, the circumstantial evidence was not so unreasonable, improbable, or unsatisfactory that no rational trier of fact could find that defendant intended to deliver the narcotics. *Brown*, 2013 IL 114196, ¶ 48.

¶ 38    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 39    Affirmed.