**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 220428-U

Order filed May 28, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-22-0428 Circuit No. 20-CM-588 |
| ROSAURA S. FORD, | ) ) | Honorable Howard C. Ryan Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Brennan and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The State presented sufficient evidence to convict defendant of domestic battery.

¶ 2     Defendant, Rosaura S. Ford, appeals her conviction of domestic battery, arguing that the evidence was insufficient to find her guilty beyond a reasonable doubt. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The State charged defendant with domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2020)). The evidence adduced at a bench trial on August 10, 2022, showed that, on the afternoon

of September 13, 2020, Rita and Gary Ford lived down the road from their son, Adam, and daughter-in-law, defendant. Before this date, Rita experienced tension with defendant, who had not visited her home in over a year. On this day, Rita was upstairs when she heard several voices downstairs. Rita had not expected visitors that day. Rita found Adam, who informed her that defendant was also present. Rita heard defendant inside the home calling her name and asking where she was. Next, defendant walked "very close" to Rita and stated, "I'm going to teach you, you fucking bitch, to stay out of my marriage." Rita did not make any physical movements toward defendant, yell, scream, or make threats to defendant prior to defendant approaching her. Defendant then "grabbed [Rita] by the hair." Rita and defendant fell to the floor, and "sudden[ly]" defendant was on top of Rita. Adam "bear hug[ged]" defendant to remove her from Rita while defendant continued to pull Rita's hair. Gary intervened and removed defendant's fingers from Rita's hair. Following the incident, Rita had a bruise on her face from falling to the floor, a bump on her throat, pain in her wrist, and a headache. Photographs showed the bruise on Rita's face and the clump of hair that was pulled from Rita's head.

¶ 5        On cross-examination, Rita acknowledged her recollection was better when the incident occurred two years earlier. Rita's written statement was transcribed by a police officer and signed by her. The statement indicated that defendant "slapped and punched" Rita. Rita testified that she did not recall being slapped or punched, but did not correct the officer's transcription before signing the statement. The statement also read that defendant said, "I want to talk to you," when she approached Rita, and not "I'm going to teach you something." Rita denied calling defendant a "bitch," making any other verbal response, grabbing defendant's arm, or striking defendant prior to defendant pulling Rita's hair. Rita "may have" touched defendant's arm after falling to the floor.

2

¶ 6     On redirect examination, Rita stated that she saw defendant only "[s]econds" before defendant grabbed her. Rita read the sentence from her statement, "I want to talk to you, fucking bitch, about ruining my marriage." Rita described defendant's tone as "[t]hreatening" and not "conversational."

¶ 7     Adam testified that he drove defendant to his parents' residence. Adam saw Gary outside mowing the lawn. Defendant rang the doorbell once and "immediately burst into the house." Once inside, Adam grew "concerned about an argument" and "signaled" for Gary to come inside. Defendant "marched through the house," yelling for Rita. Defendant was not in the room when Adam first saw Rita. When defendant returned, she approached Rita and said, "I have something I want to tell you[,]" and attacked Rita. Rita did not say anything or "make any sort of threatening movements" toward defendant. Adam described his memory of the incident as "kind of fuzzy." Adam remembered that he was a few feet away from defendant and Rita when he saw defendant "latch[ ] onto Rita's hair." Adam attempted to "break it up" by putting his arms around defendant, and Gary interjected by removing defendant's hand from Rita's hair. Adam observed Rita's hair on the ground. Adam did not observe any injuries on defendant resulting from the altercation.

¶ 8     On cross-examination, Adam stated that it was not possible that Rita called defendant "a bitch," made any similar statement, or grabbed defendant prior to defendant pulling Rita's hair. In an order of protection, Adam's attorney transcribed his statement regarding the incident. Adam read and signed the statement, agreeing that it was accurate. The statement read that defendant "rushed" Rita, "punched" her in the face, and then "grabbed [Rita's] hair." Adam testified that defendant did not punch Rita, and that part of his written statement was incorrect.

Adam did not notice marks or blood on defendant after the incident but did observe marks on her wrists after defendant ran through the woods back to their residence.

¶ 9    Gary testified that he was mowing the lawn at his residence when Adam and defendant arrived. Defendant had not been to the residence for approximately 1½ years before this day. Approximately one minute after Adam entered the residence, he signaled for Gary to come inside. Adam told Rita that defendant was also present and looking for her. Following Adam, Gary immediately heard defendant yelling and saw defendant attack Rita. Despite Gary's "somewhat blocked" view, he observed defendant "yelling and screaming at Rita" and defendant's hand and glove "locked into Rita's hair." Gary did not hear Rita say anything to defendant or "make any sort of threatening motions or movements towards" defendant prior to the attack. Gary "circled around them" to break up the altercation. Gary grabbed defendant's wrist and then he "had to peel a thumb away and one finger at a time to get [defendant] to release the hair." Meanwhile, Adam had placed defendant in a "bear hug" on the floor while defendant yelled and screamed. Once Gary removed defendant's hand, the physical altercation ended. Following the incident, Gary observed that Rita's cheek was red, and a clump of hair had been pulled from her scalp.

¶ 10    On cross-examination, Gary testified that due to his partially blocked view, it was possible that Rita might have grabbed defendant's arm before defendant pulled Rita's hair. Gary did not observe "claw marks" on defendant's arm after the incident but stated he did not look at her arms.

¶ 11    Officer Bradley Baxter responded to the scene and interviewed Rita and defendant. Baxter observed "slight bruising" on Rita's face and hair that Rita stated had been pulled from

4

her scalp. Baxter observed scratches on defendant's right forearm, upper left arm, and on one knee. Defendant reported sustaining those injuries "as she was running through the creek."

¶ 12       Defendant testified that Adam drove her to Rita and Gary's residence "[t]o have a discussion with Rita about setting boundaries." Upon arrival, defendant entered the house, went upstairs, and returned downstairs after hearing Adam and Rita talking. Defendant approached Rita and "was looking at her outfit," which "seemed odd to be wearing." Defendant denied "rush[ing]" Rita or saying anything to Rita. When defendant got closer, Rita said, "You're the bitch." Rita used her nails and "clawed" at defendant's forearm drawing blood and resulting in "several scars." Defendant showed the court a scar on her arm. Defendant then "grabbed the top of [Rita's] hair." Adam grabbed defendant's left arm and Gary intervened to break up the altercation. While Rita and defendant were on the floor, Rita scratched defendant's leg as defendant moved, "trying to push them away." Defendant said that there was blood on the floor, but it was not shown in the photograph because it had been cleaned up. Defendant identified photographs of her arms taken a few days after the incident showing several red marks and scratches. Defendant stated that the injuries on her arms were sustained from the altercation with Rita but the injuries on her legs were from running through the creek.

¶ 13       On cross-examination, defendant stated that it had been over a year since she had been at Rita's residence. Defendant did not call to let Rita know that she and Adam were coming over. When defendant approached within a few feet of Rita, she heard the backdoor close and then Rita "attacked" defendant. Defendant "react[ed]" by grabbing Rita's hair to get her "hand off of [defendant's] forearm" in "self-defense." A few seconds later, Adam appeared. Defendant acknowledged that the photograph showed multiple scratches in different directions. Defendant denied telling Baxter that the scratches were from running through the creek.

5

¶ 14     Following trial, the court indicated that it considered "the evidence as a whole," balanced the witnesses' testimony, the witnesses' credibility, photographs of the injuries, and all the evidence presented to find the facts that were "truthful, honest, and those that may be a little bit embellished." The court acknowledged the witnesses' inconsistencies and "prior statements *** not testified to here under oath but were given out at an earlier date." The court found that defendant's motive was unclear, stating, "you cannot use physical contact because someone is interfering with your marriage." The court did not believe that the injuries defendant sustained were from Rita or Adam and instead stated that they were more likely caused by defendant running through the woods. The court stated it had "a very difficult time" applying self-defense to the facts presented. The court found defendant guilty of domestic battery and sentenced defendant to one year of conditional discharge. Defendant appeals.

¶ 15                                   II. ANALYSIS

¶ 16     On appeal, defendant argues that the State failed to prove her guilty of domestic battery beyond a reasonable doubt. Specifically, defendant contends that the court improperly found Rita and Adam credible in light of their prior inconsistent statements that defendant punched and slapped Rita. Defendant reasons that these "false statements" amounted to "lie[s]," which fundamentally eroded the confidence in their testimonies.

¶ 17     When a defendant makes a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This standard of review does not allow the reviewing court to substitute its judgment for that of the fact finder on questions involving the

6

weight of the evidence or the credibility of the witnesses." *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). Thus, we afford great deference to the trier of fact, "to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). We will not retry a defendant and must allow all reasonable inferences from the evidence in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42.

¶ 18      To prove defendant guilty of domestic battery, the State had to establish that defendant knowingly, without legal justification, "caused bodily harm to Rita \*\*\*, a family or household member of the defendant, in that the said defendant pulled [Rita's] hair." See 720 ILCS 5/12-3.2(a)(1) (West 2020). We note that while defendant argued at trial that she acted in self-defense, she does not assert on appeal that the evidence proved she acted in self-defense. Instead, defendant's sole argument relies on Rita and Adam's testimony being incredible. Therefore, defendant has effectively abandoned her self-defense claim on appeal, and we will not consider it. See *People v. Banks*, 227 Ill. App. 3d 462, 474 (1992).

¶ 19      Here, the testimony established that defendant had a strained relationship with Rita and Gary for at least one year prior to the incident. On the day of the incident, defendant entered the residence and walked around looking for Rita. Upon locating her, defendant approached Rita and said something to the effect of "I want to talk to you, you fucking bitch" before she pulled Rita's hair, bringing them both to the floor. Adam intervened and placed defendant in a "bear hug" while Gary removed defendant's hand from Rita's hair. Adam and Gary did not hear Rita say anything before the attack and observed defendant's hand entwined in Rita's hair following the attack, corroborating Rita's testimony. Additionally, a clump of Rita's hair was on the floor, providing further corroboration.

¶ 20    Importantly, the court found Rita and Adam's testimony credible. The court acknowledged the inconsistencies of their prior statements, noted that the earlier statements were not under oath, and characterized the statements as "embellish[ments]." Moreover, the prior statements were consistent with the trial testimony in that defendant pulled Rita's hair, supporting the charged conduct. The testimony was further corroborated by Gary. On the other hand, the court found defendant's testimony incredible. Specifically, the court did not believe that defendant's injuries came from the physical altercation, and instead, the scratches were more likely caused by running through the woods, as defendant initially told officers. Defendant's incredible testimony regarding this fact casts doubt on her remaining testimony depicting Rita initiating the physical altercation and defendant acting in self-defense.

¶ 21    Though some of defendant's testimony was corroborated by Rita, Adam, and Gary, including defendant's troubled relationship with Rita, going to Rita's residence to confront her, and engaging in a physical altercation, the court was not required to believe all of defendant's testimony. See *People v. Spaulding*, 68 Ill. App. 3d 663, 675 (1979) ("the trier of fact is free to believe part of one's testimony without believing all of it"). We conclude that the court's findings are reasonable and we find no basis to reverse its judgment. See *Jackson*, 232 Ill. 2d at 280-81; *People v. Wheeler*, 226 Ill. 2d 92, 114-15 (2007) (the trier of fact is best equipped to determine the credibility of a witness, and we afford great deference to such credibility determinations unless the determination is unreasonable). The evidence, viewed in the light most favorable to the State, is sufficient to sustain defendant's conviction for domestic battery.

¶ 22                                III. CONCLUSION

¶ 23    The judgment of the circuit court of La Salle County is affirmed.

¶ 24    Affirmed.