**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250356-U

Order filed June 22, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0356 Circuit No. 24-CM-446 |
| ROMESA K. HARWELL, | ) ) ) | Honorable Brenda L. Claudio, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Brennan and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:  The evidence was sufficient to prove the defendant guilty beyond a reasonable doubt.

¶ 2        The defendant, Romesa K. Harwell, appeals her convictions for battery, asserting the State presented insufficient evidence to prove her guilty beyond a reasonable doubt.

¶ 3                                    I. BACKGROUND

¶ 4　　　The State charged the defendant with two counts of battery (720 ILCS 5/12-3(a)(1), (2) (West 2024)), alleging that she, knowingly and without legal justification, sprayed Jewell Davis with pepper spray, resulting in insulting and provoking contact and causing bodily harm. The matter proceeded to a bench trial.

¶ 5　　　At trial, Davis testified that she and Howard Wilson shared a child, J.C. On July 18, 2024, Wilson lived with the defendant. Davis drove to the defendant's residence to retrieve J.C.'s clothing from the previous day. Upon arrival, Davis exited her vehicle, leaving J.C. sitting in the front passenger seat and her daughter in the back seat. Davis approached the defendant's door, and after approximately one minute, the defendant and Wilson arrived in their vehicle. Wilson exited the vehicle and engaged in a heated conversation with Davis. Approximately one minute later, the defendant exited the vehicle and entered her residence. When the discussion with Wilson became "intense" and involved verbal threats, Davis returned to her vehicle to leave. The defendant exited the residence and yelled as she approached Davis's open driver's side window. The defendant pointed pepper spray at Davis and sprayed while Davis was reversing her vehicle to leave. The defendant was approximately three feet from Davis's window when she sprayed the pepper spray directly into Davis's face and eyes. Davis believed that the pepper spray also reached J.C.'s face and eyes, who was seated next to her. While she did not observe the pepper spray hit J.C., Davis could hear him screaming. The pepper spray impaired Davis's vision, causing her to tear up "profusely." Davis felt "blind" and "didn't know if [the defendant] was gonna jump on [her]" Davis saw the defendant and Wilson return to their vehicle without "check[ing] on anybody." Davis pulled onto the street and called the police. Davis and J.C. received emergency medical treatment soon after.

¶ 6        On cross-examination, Davis denied threatening Wilson with a weapon or hearing Wilson call for help. Davis indicated that Wilson did not physically attack her. However, Wilson threatened to slap Davis if she did not leave. Davis denied that she instigated the argument with Wilson, possessed the pepper spray, or that she was sprayed in the process of the defendant taking her pepper spray.

¶ 7        Officer Danielle Seacrest testified that she responded to the defendant's residence following Davis's call to the police. Seacrest observed that Davis was upset, distressed, and her eyes were "red and watering." Seacrest also saw that J.C. "was upset, crying," "had snot running down his nose," and had red "watering eyes." First responders provided Davis with a towel. Seacrest's body camera footage was entered into evidence. The footage briefly showed Davis's face, including her red and swollen eyes. Throughout the encounter, Davis held a damp towel and periodically wiped her own face and J.C.'s face. The recording depicted J.C. crying but did not show that he had red eyes.[1]

¶ 8        Wilson testified for the defense that he was in a dating relationship with the defendant. On the date in question, Wilson recalled that Davis was at the defendant's door when Wilson and the defendant arrived. Wilson immediately exited the vehicle, and the defendant exited at the same time. Wilson described his conversation with Davis regarding J.C.'s clothing as heated. While Wilson was speaking with Davis, the defendant remained outside. Wilson denied that the defendant entered the residence or that Davis was physically attacked. Instead, Davis and the defendant began fighting, and in the process the defendant obtained Davis's pepper spray and sprayed Davis in the face. Wilson observed that Davis grabbed her face, ran to her vehicle, and

---

[1] The State's brief relies on portions of the video which were not admitted at trial. For purposes of this appeal, we have limited our consideration of the evidence to the clip the State admitted. See *People v. Johnson*, 2026 IL 131337, ¶¶ 93, 97 (a review of the sufficiency of evidence presented at trial must be limited to evidence actually admitted at trial).

drove away. Wilson stated that J.C. was "nowhere around." Wilson could not see into Davis's vehicle due to the "black tint" and did not know if anyone else was in the vehicle.

¶ 9       The defendant testified that Davis was on her front porch when she arrived home with Wilson. The defendant allowed Davis and Wilson to talk until Davis became too loud and aggressive and started "acting crazy." The defendant stated that they were all standing outside their vehicles when she approached Davis. The defendant denied having pepper spray in her possession. The defendant explained that Davis "act[ed] like she was fittin" to pepper spray her, so the defendant "snatched it" from Davis's keychain and sprayed Davis. The defendant clarified that she and Davis were "struggling" for the pepper spray and both the defendant and Davis had their hands on the pepper spray when the defendant "snatched" the cannister. The defendant did not want Davis to spray her and was trying to get Davis to move back, in an attempt to protect herself. After the defendant sprayed Davis, she watched Davis drive away. The defendant then left the residence. The defendant denied seeing or hearing J.C.

¶ 10       The court found the defendant guilty of both counts of battery. In doing so, the court commented on Seacrest's testimony and body camera footage, which corroborated Davis's version of events. Specifically, the body camera video showed that J.C. was present and upset, and Seacrest personally observed that J.C.'s eyes were red and watery. The court stated, "I believe that when *** Davis said that she saw the defendant go in the house, that [the defendant] went in the house to get her pepper spray. I don't believe that it was taken from *** Davis' hand." The court discussed the defendant's version of events and did not believe an argument occurred between Davis and the defendant requiring the defendant to defend herself. Instead, the evidence showed that Davis and Wilson were in an argument, and the defendant intervened with pepper spray. The

4

court found that the defendant's version of events was "not adding up," and was incredible. The two counts merged, and the court sentenced the defendant to one year of conditional discharge.

¶ 11	The defendant filed a motion for a new trial alleging that the State failed to prove the defendant guilty beyond a reasonable doubt. At the hearing, counsel argued that the evidence showed Davis was the initial aggressor as opposed to the victim, because Davis was being physically aggressive and the defendant acted in self-defense. The court denied the defendant's motion, noting that Davis's version, including J.C.'s presence, was corroborated by Seacrest's observations despite the defendant and Wilson denying seeing J.C. The court also noted that the defendant fled the scene, and again, concluded that her version of events was incredible. The defendant appealed.

¶ 12	II. ANALYSIS

¶ 13	On appeal, the defendant argues that the State did not prove her guilty beyond a reasonable doubt of battery, where Davis's testimony "did not comport with the laws of nature or universal human experience." Specifically, the defendant asserts that the court erred in finding Davis's testimony credible in light of extenuating facts and the defendant's credible testimony.

¶ 14	When a defendant makes a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original and internal quotation marks omitted.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985). "This standard of review does not allow the reviewing court to substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). Thus, we afford great deference to the trier of fact, "to determine the credibility of witnesses, to weigh evidence

5

and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). We will not retry a defendant and must allow all reasonable inferences from the evidence in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42. To prove the defendant guilty of battery, the State had to establish that the defendant, knowingly and without legal justification, made physical contact of an insulting and provoking nature with Davis, and that physical contact resulted in bodily harm. See 720 ILCS 5/12-3(a)(1), (2) (West 2024).

¶ 15 In this case, Davis testified consistently that following her arrival at the defendant's residence, she and Wilson were involved in a verbal dispute. During the argument, Davis observed the defendant enter the residence and return a few minutes later. Davis was attempting to leave when the defendant approached her vehicle within three feet of the open driver's seat window. The defendant sprayed Davis with pepper spray, while J.C. sat in the front passenger seat. Corroborating Davis's statements, Seacrest testified that shortly after the incident, she observed that both Davis and J.C. were upset, distressed, and both had red and watering eyes. Additionally, Seacrest's body camera footage captured Davis and J.C.'s demeanor and Seacrest had the benefit of personally observing Davis and J.C. In the body camera footage, J.C. appeared upset while lacking observable physical distress caused by the pepper spray, which corroborated Davis's and the defendant's testimony that Davis was the defendant's intended target. See *People v. Spaulding*, 68 Ill. App. 3d 663, 675 (1979) ("the trier of fact is free to believe part of one's testimony without believing all of it"). Thus, a reasonable inference exists that Davis would have taken the brunt of the pepper spray and suffered more severe symptoms. See *Lloyd*, 2013 IL 113510, ¶ 42.

¶ 16 More importantly, the court found Davis credible. The court compared Davis's and the defendant's testimony and found Davis's version of events believable. In contrast, the court noted

6

that the defendant's, and similarly Wilson's, version did "not add[ ] up," and were incredible. Though the defendant offered the court an alternative version of what occurred, the court was not required to believe her testimony. See *Spaulding*, 68 Ill. App. 3d at 675; see also *Siguenza-Brito*, 235 Ill. 2d at 228 ("the testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant"). Moreover, it was the court's duty as the trier of fact to weigh and resolve any possible conflicts regarding the location and manner in which the battery occurred with the other evidence presented. See *Siguenza- Brito*, 235 Ill. 2d at 228; see also *Jackson*, 232 Ill. 2d at 280-81. To the extent that the defendant asserts the court improperly relied on disputed or misconstrued facts related to (1) J.C.'s presence, (2) whether the pepper spray mechanism allowed the cannister to be separated from Davis's keys, (3) the defendant's motive for leaving the residence after the battery, and (4) the lack of physical evidence in Davis's vehicle, we find the defendant's argument asks this court to retry the defendant. See *Lloyd*, 2013 IL 113510, ¶ 42. Here, even assuming the defendant's claims regarding these facts are true, considered in light of the remaining evidence, we agree with the court's credibility determinations and see no reason to substitute our judgment. See *Jackson*, 232 Ill. 2d at 280-81; see also *People v. Wheeler*, 226 Ill. 2d 92, 114-15 (2007) (because the trier of fact is best equipped to determine the credibility of a witness, we afford great deference to such credibility determinations unless the determination is unreasonable). Therefore, taken in the light most favorable to the State, sufficient evidence was presented to sustain the defendant's convictions for battery.

¶ 17 In coming to this conclusion, we note that the defendant spent a significant portion of his brief referencing the Sabre website, which offers educational information about pepper spray and sells pepper spray products. Importantly, none of the Sabre information that the defendant used to support his argument that Davis's testimony "does not comport with the laws of nature or universal

human experience," was presented, argued, or admitted at trial. See *People v. Johnson*, 2026 IL 131337, ¶¶ 93, 97 (a reviewing court evaluating sufficiency of evidence may not consider material that was not considered by trier of fact in weighing witness' credibility). Additionally, the defendant attempts to use the lack of evidence admitted regarding Davis's daughter to support an argument that the evidence weighed against Davis's credibility. Significantly, there was no evidence presented regarding any effects or lack of effects occurring to Davis's daughter. In both instances, it would be improper to rely on facts outside of those presented to the trier of fact when considering the defendant's sufficiency of the evidence claim. See *id.* ¶¶ 92-94 (appellate court erred when it *sua sponte* relied on research studies to support its reversal of defendant's conviction when the trier of fact had no opportunity to consider the matter). Therefore, we decline to do so here.

¶ 18                                                    III. CONCLUSION

¶ 19          The judgment of the circuit court of Kankakee County is affirmed.

¶ 20          Affirmed.